UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:14-cv-23933-PCH

JOHN DOE #1, JOHN DOE #2,
JOHN DOE #3, and
FLORIDA ACTION COMMITTEE, INC.,

    Plaintiffs,

v.

MIAMI-DADE COUNTY; FLORIDA
DEPARTMENT OF CORRECTIONS
SUNNY UKENYE, Circuit Administrator
For the Miami Circuit Office, FLORIDA DEPARTMENT
OF CORRECTIONS, in his official capacity,

    Defendants.
_____/

## ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

THIS CAUSE is before the Court on Plaintiffs' Motion for Relief from Judgment [D.E. 61]. The Court held oral argument on the motion on June 12, 2015. The Court has considered the motion, Defendant Miami-Dade County's response [D.E. 62], and Plaintiffs' reply [D.E. 64], as well as the parties' oral arguments. For the following reasons, Plaintiffs' motion is DENIED.

### I.    BACKGROUND

Plaintiffs John Does numbers 1 through 3 sued Miami-Dade County (the County) and the Florida Department of Corrections (the FDOC) for alleged constitutional violations arising from the County's Lauren Book Child Safety Ordinance, MIAMI-DADE COUNTY CODE § 21-277 *et seq.*, which prohibits convicted sex offenders from residing within 2,500 feet of a school. Plaintiffs, who are convicted sex offenders subject to the Book Ordinance's residency restriction, claimed that the ordinance was unconstitutionally vague on its face and violated the United States Constitution's *ex post facto* clause, and that the County's and the FDOC's enforcement of

1

the ordinance violated Plaintiffs' substantive due process rights. The Court dismissed these claims with prejudice on April 3, 2015 [D.E. 60]. On April 24, 2015, Plaintiffs moved for relief from the Court's order pursuant to Federal Rule of Civil Procedure 60(b)(1).

In their motion for relief from judgment [D.E. 61], Plaintiffs argue that the Court erred in dismissing their complaint with prejudice, because—according to Plaintiffs—they could have amended the complaint to assert a viable as-applied vagueness challenge.[1] (Plaintiffs do not contest the Court's dismissal of their *ex post facto* and substantive due process claims.) Plaintiffs indicate they would base their proposed as-applied challenge on the County's allegedly arbitrary enforcement and interpretation of the Book Ordinance. As described in the Court's order of dismissal, Plaintiffs have alleged that, in 2013, political officials from Miami-Dade Public Schools and the Miami-Dade Homeless Trust asked the County Police Department to re-classify the Miami Bridge, an emergency youth shelter, as a "school" subject to the Book Ordinance's residency restriction. The FDOC then evicted approximately 50 paroled sex offenders from the River Park, a mobile home community separated from the Miami Bridge by the Miami River, but within 2,500 feet of the Miami Bridge as the crow flies. The County, in contrast, opted not to evict the approximately 50 sex offenders who remained at the River Park. The FDOC has apparently reconsidered its determination, and has allowed a number of the convicted sex offenders that it evicted in 2013 to reestablish residence at the River Park. No new convicted sex

---

[1] As described in detail in the Court's order of dismissal [D.E. 60], Plaintiffs' counsel repeatedly confirmed that Plaintiffs brought their vagueness challenge exclusively under the theory that the Book Ordinance's definition of a "school" is vague on its face. Therefore, the Court evaluated this challenge only by reviewing the plain language of the ordinance. The Court held that the ordinance's definition of a "school" as "a public or private kindergarten, elementary, middle, or secondary school" was consistent with the plain meaning of the term, and therefore was not vague on its face. Order [D.E. 60] at 15–17.

2

offenders may live there, however, because a traditional school has since opened within 2,500 feet of the River Park.

As they did in their responses to Defendants' motions to dismiss, Plaintiffs argue in their motion for relief from judgment that the FDOC's River Park evictions forced many convicted sex offenders into homelessness. Plaintiffs themselves, however, were not among those evicted from the River Park or made homeless by the FDOC's actions. According to Plaintiffs' amended complaint [D.E. 25], John Doe #1 was in jail at the time of the River Park eviction. Plaintiffs alleged that, upon John Doe #1's release from jail, his probation officer suggested an abandoned lot in Hialeah as a residency location in compliance with the Book Ordinance. John Doe #2 was evicted from the River Park (before the FDOC's enforcement action) for failing to pay rent, and has recently moved back to the River Park, with his probation officer's approval. And John Doe #3, like John Doe #1, never lived in the River Park; rather, his Shorecrest landlord evicted him for failing to pay rent.

Plaintiffs, however, claim that the County's and the FDOC's prior inconsistent enforcement of the Book Ordinance, coupled with the ordinance's vagueness, has left them in constant fear and doubt about where they may or may not reside. Plaintiffs claim that John Doe #2 is afraid that, at any moment, the County may again reverse course on whether the Miami Bridge is a "school" under the Book Ordinance and evict him from the River Park. Plaintiffs also claim that John Does #1 and #3, though they do not live at the River Park, are concerned that they may accidentally move into a residence within 2,500 feet of an "alternative educational program" similar to the Miami Bridge. Plaintiffs contend that, because County policymakers retain considerable discretion on whether to classify such programs as "schools" under the Book Ordinance, it is likely that the County could re-classify any one of many such facilities in Miami-

Dade County as a "school" subject to the ordinance's residency restriction, and evict or prosecute convicted sex offenders living within the vicinity. Plaintiffs urge that a declaratory judgment from this Court on whether such "alternative educational programs" are "schools" within the meaning of the Book Ordinance would assuage their fears of potential future prosecution or eviction.[2]

## II.   ANALYSIS

### A. Rule 60(b)(1) does not permit Plaintiffs to reopen a judgment to raise a claim that they could have pursued while this case was pending.

Plaintiffs seek reconsideration of the Court's order dismissing their Amended Complaint with prejudice under Federal Rule of Civil Procedure 60(b)(1). Rule 60(b)(1) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Although not every Circuit Court of Appeal apparently agrees,[3] the Eleventh Circuit has held that "[t]he 'mistakes' of judges may be remedied under this provision." *Parks v. U.S. Life and Credit Corp.*, 677 F.2d 838, 839 (11th Cir. 1982) (citation omitted). However, "the district court

---

[2] Most of Plaintiffs' arguments concern the effects of Defendants' enforcement of the Book Ordinance on other convicted sex offenders. Plaintiffs' motion references the 50 individuals that the FDOC evicted from the River Park, the 98 convicted sex offenders originally living at the River Park, the 11 offenders that the FDOC has permitted to return to the River Park, the unknown number of offenders who did not live at the River Park during the FDOC's eviction, but reside there now, and the "roughly 170 covered individuals who unwittingly reside at currently-approved locations within 2,500 feet of Miami-Dade's nearly four dozen alternative educational programs . . . ." *See* Pls.' Mtn. [D.E. 61] at 8–10. The Court, however, declines to consider the Book Ordinance's purported effects on non-parties, as further described below.

[3] The First Circuit, for example, has expressed skepticism on whether Rule 60(b)(1) applies to the legal "mistake" of a judge. *See Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir. 1971) ("We neither understand the basis for this interpretation, nor sympathize with it. If the court merely wrongly decides a point of law, that is not 'inadvertence, surprise, or excusable neglect.'"). Of course, if a district court wrongly decides a case, the losing party has the right to appeal.

4

is not required to grant relief unless the legal error is obvious." *Chambers v. Florida Parole Comm'n*, 257 F. App'x 258, 259 (11th Cir. 2007) (citing *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977)).

Though Rule 60(b)(1) is the legal basis for Plaintiffs' motion for relief, Plaintiffs do not quote the Rule, and cite no precedent applying it in an analogous case. Instead, despite conceding that "[t]here is no Rule 15 motion before the Court," Plaintiffs rely largely on Federal Rule of Civil Procedure 15(a)(2) to support their argument. Plaintiffs seem to be arguing that the Court's purported "mistake" was made by failing to "freely" permit the amendment of their complaint as directed by Rule 15. *See* FED. R. CIV. P. 15(a)(2). Rule 15, however, "by its plain language, governs amendment of pleadings *before* judgment is entered; it has no application *after* judgment is entered." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). Rather, a post-judgment Rule 60(b)(1) motion predicated on a judge's "mistake" faces a much higher bar than a Rule 15 request for leave to amend:

> There is authority that where a district court's mistake was "clear on the record" and involved a "plain misconstruction" of the law and the erroneous application of that law to the facts, " 'compelling policies of basic fairness and equity reflected by 60(b)' " may mandate amendment to "conform its judgment to the law."

*Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992) (quoting *Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 (4th Cir. 1979)).

Plaintiffs contend that the Court committed a legal "mistake" justifying relief under Rule 60(b)(1) by dismissing their amended complaint with prejudice. Plaintiffs argue that the Court's dismissal should have been without prejudice, as Plaintiffs believe that they could have amended their facial vagueness challenge to state a viable claim that Defendants' enforcement of the Book Ordinance is unconstitutional as applied to them. Plaintiffs, however, have not identified any legal mistake in the order of dismissal that was "clear on the record" and a "plain

5

misconstruction" of the law. Instead, Plaintiffs argue that the Court erred by failing to grant them relief that they never requested—while this case was open and pending, Plaintiffs never raised an as-applied vagueness claim, and in fact repeatedly confirmed that they were exclusively raising a facial vagueness claim. *See* Pls.' Resp. [D.E. 40] at 2.[4] Plaintiffs offer no explanation for their failure to previously argue an as-applied claim, other than stating that "Supreme Court precedent suggest[ed] that facial challenges may be brought against criminal statutes." Pls.' Mtn. [D.E. 61] at 3.[5] In other words, Plaintiffs' previous reliance on a facial vagueness theory appears to be the result of the considered judgment of Plaintiffs' counsel that a facial challenge alone was more likely to succeed than a challenge including an as-applied theory.

However, Plaintiffs' decision to forego an available legal theory while their case was pending does not provide a basis for relief under Rule 60(b)(1). In fact, the Eleventh Circuit has repeatedly held that a district court does not abuse its discretion in denying a Rule 60(b) motion "when the judgment or order from which the movant seeks relief was entered as a result of the movant's choice to rely on an unsuccessful legal theory." *Maradiaga v. United States*, 679 F.3d 1286, 1294 (11th Cir. 2012) (citation omitted). In *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014), for example, the Eleventh Circuit rejected a plaintiff's request to reopen a case to assert a legal theory that the plaintiff could have previously

---

[4] Indeed, Plaintiffs' counsel insisted on asserting a facial vagueness challenge despite the Court's repeated observation that their legal theory appeared to be as-applied. *See* Oral Arg. Tr. at 5:5–12 (THE COURT: . . . "[W]hat concerns me is that you've thrown a lot of issues out there that aren't appropriate in a facial challenge to this ordinance . . . . [PLAINTIFFS]: No, your honor, we state very clearly in our pleadings that our vagueness and *ex post facto* challenges are facial challenges . . . .").

[5] The Supreme Court precedent cited by Plaintiffs is *City of Chicago v. Morales*, in which a plurality of the Court found that Chicago's criminal loitering ordinance was subject to a facial challenge for vagueness. 527 U.S. 41, 55 (1999). *Morales* does not state that a plaintiff challenging a criminal ordinance is required to raise a facial vagueness claim.

6

raised, but did not raise. In *Aldana*, the plaintiffs attempted to defeat a motion to dismiss for *forum non conveniens* by initially arguing that the foreign jurisdiction urged by the defendants was inadequate. *Id.* After failing on their initial inadequacy argument, the plaintiffs moved for relief from judgment under Rule 60(b)(6),[6] on the basis that the foreign forum was unavailable. *Id.* The Eleventh Circuit characterized the plaintiffs' post-judgment resort to a new legal theory as "gamesmanship," and held that the plaintiffs were not entitled to relief under Rule 60, because they had not previously raised their unavailability theory, and had offered no justification for the oversight. *Id.*

In *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1085–86 (10th Cir. 2005), the Tenth Circuit applied the same principles in a case in which the plaintiff, like Plaintiffs here, sought relief from a judgment rejecting a facial vagueness challenge to plead a new as-applied challenge. In *Tool Box*, the plaintiff initially raised a facial First Amendment challenge to a city's protective covenants, which had prohibited the plaintiff from opening a nude-dancing club. An *en banc* panel of the Tenth Circuit held that the ordinance was not, on its face, unconstitutional. *Id.* Following the Tenth Circuit's *en banc* ruling, the plaintiff moved in district court for relief from judgment under Rule 60(b), and for leave to amend its complaint under Rule 15(a), to assert a "potentially meritorious as-applied challenge." *Id.* at 1086. In affirming the district court's denial of the motion, the Tenth Circuit noted that the plaintiff "had every opportunity to pursue an as-applied challenge during the merits proceedings, but chose not to do so; indeed, it asked the district court not to consider such a challenge." *Id.* at 1089. The court

---

[6] Rule 60(b)(6) is a catch-all provision that provides for reconsideration for "any other reason that justifies relief." While the standard applied to Rule 60(b)(6) motions is different from the Rule 60(b)(1) standard, *Aldana* based its decision on the plaintiffs' failure to raise an available theory while the case was pending, rather than the specific Rule 60(b)(6) standard for relief.

7

concluded that, "[f]or this reason, Tool Box did not establish mistake or surprise under Rule 60(b)(1)." *Id.* at 1089 n.3 (citations omitted).[7]

Plaintiffs, however, urge the Court to follow the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962). In *Foman*, the Supreme Court held that a district court erred in denying a plaintiff's motion to vacate a judgment in order to amend her complaint to assert an alternative legal theory. *Id.* at 180. *Foman* is distinguishable. While not explicitly stated in the Supreme Court's order, it appears that the district court's initial dismissal of the plaintiff's complaint in *Foman* was without prejudice; therefore, the issue in that case was whether the district court should have granted leave to amend under Rule 15. *See id.* at 179. Indeed, the Supreme Court based its ruling on Federal Rule of Civil Procedure 15(a)'s admonishment that courts should freely grant leave to amend. *Id.* at 182. Based on the text of Rule 15(a), the Court in *Foman* elaborated the much-cited rule that "[i]n the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" *Id.* Here, however, because Plaintiffs never moved to amend their complaint the Rule 15(a) standard is inapplicable, as previously discussed. *Jacobs*, 626 F.3d at 1344.

Further, *Foman* also stated that "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman*, 371 U.S. at 182. And decisions both pre- and post-dating *Foman* have made clear that a district court is well within its discretion in denying a motion for relief from judgment based on a litigant's failure to raise an available legal theory during the pendency of a case. Here, like the plaintiffs in *Toolbox* and *Aldana*, Plaintiffs

---

[7] The Tenth Circuit's resolution of the *Toolbox* plaintiff's motion for relief from judgment ultimately rested on the plaintiff's failure to file the motion within the one-year time limit set by Rule 60. *Id.* at 1088–89. The Tenth Circuit's observation on the merits of the *Tool Box* plaintiff's Rule 60 motion, however, is consistent with Eleventh Circuit precedent and fully relevant to Plaintiffs' motion for relief.

8

deliberately elected to pursue a single legal theory that ultimately proved unsuccessful. Plaintiffs now move for reconsideration solely on the basis that an as-applied vagueness theory they could have raised previously might lead to a better result now. However, "[t]here must be an end to litigation some day, and free, calculated and deliberate choices are not to be relieved from." *Parks*, 677 F.2d at 841 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). As repeatedly confirmed by the Eleventh Circuit, "[i]t is not an abuse of discretion for the district court to deny a motion under Rule 60(b) when that motion is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment." *Maradiaga*, 679 F.3d at 1294.

In short, the Court concludes that Rule 60(b)(1) provides no basis for Plaintiffs to obtain relief from the Court's judgment dismissing their amended complaint with prejudice. The Court's failure to permit Plaintiffs to further amend their amended complaint, when Plaintiffs could have requested but did not request amendment, is not a legal "mistake" that is "clear on the record" or that involved a "plain misconstruction of the law," such as would justify the relief that Plaintiffs seek. *See Nisson*, 975 F.2d at 806 (citation omitted). Therefore, Rule 60 does not apply. Even if Rule 60 provided a legally viable route by which Plaintiffs could obtain relief from the Court's dismissal of their amended complaint with prejudice, it would be within the Court's discretion whether to grant such relief. *Foman*, 83 S. Ct. at 230. Based on the record before it, the Court would not exercise its discretion in favor of granting Plaintiffs' motion.

**B. Plaintiffs cannot state a viable as-applied challenge.**

Despite having the discretion, and exercising it, to deny Plaintiffs' motion for the procedural reasons described above, the Court nevertheless will briefly address the merits of Plaintiffs' as-applied claim. Plaintiffs contend that the Court erred in concluding that any

amendment of their existing claims would have been futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citation omitted). In other words, for Plaintiffs to prevail on their contention that the Court made a "mistake" in dismissing their amended complaint with prejudice, Plaintiffs would have to show that they can state an as-applied claim that would not be subject to immediate dismissal. The Court, however, concludes that Plaintiffs' proposed as-applied claim would be subject to immediate dismissal, because Plaintiffs have failed to present a case or controversy that is ripe for review under Article III of the United States Constitution.

"Ripeness doctrine originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases or controversies." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (citation, punctuation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Of particular relevance to Plaintiffs' as-applied theory is the Eleventh Circuit's observation that, "[b]ecause the question of ripeness depends on the timing of the adjudication of a particular issue . . ., it applies differently to facial and as-applied challenges." *Harris*, 564 F.3d at 1308 (citation omitted). Therefore, while a facial challenge may be resolved as a pure question of law, Plaintiffs' as-applied theory "necessarily requires the development of a factual record for the court to consider." *Id.* (citation omitted).

Plaintiffs' factual support for the ripeness of their as-applied theory, however, is virtually nonexistent. An as-applied challenge addresses "whether a statute is unconstitutional on the

facts of a particular case or to a particular person."[8] *Id.* (citing BLACK'S LAW DICTIONARY at 223). The particular people to whom the Book Ordinance has allegedly been applied in an unconstitutional manner in this case are Plaintiffs John Does numbers 1 through 3; yet, no John Doe Plaintiff currently faces eviction or prosecution for violating the Book Ordinance. And while the John Doe Plaintiffs have each struggled to find stable housing, Plaintiffs' own allegations amply demonstrate that the Book Ordinance did not cause their struggles. John Doe #3, for example, was evicted from his Shorecrest apartment for failure to pay rent. When John Doe #1 was released from prison, his probation officer suggested an abandoned lot in Hialeah as a location in compliance with the Book Ordinance, but did not tell him that the Book Ordinance required him to live there. Plaintiffs readily admit that Defendants no longer enforce the Miami Bridge as a "school" subject to the Book Ordinance's residency restriction, and John Doe #2 now lives in the River Park with his probation officer's approval.

In other words, the County[9] has not "applied" the Book Ordinance to any John Doe Plaintiff in this case. Plaintiffs, however, contend that they should not be required to wait for the County to evict or prosecute them before challenging the ordinance's vagueness as applied to

---

[8] Rather than identify any enforcement action currently pending against any Plaintiff in this case, Plaintiffs devote a substantial portion of their briefs to relating facts that are irrelevant to their as-applied challenge. Plaintiffs, for example, repeatedly refer to the plight of hundreds of convicted sex offenders in finding and remaining in suitable housing in Miami-Dade County. *See* Pls.' Mtn. [D.E. 61] at 8–10. Yet, these allegations cannot support a claim that the Book Ordinance is vague as applied to the John Does, because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). Therefore, the Court has not considered Plaintiffs' contentions on the Book Ordinance's application to non-parties.

[9] Plaintiffs conceded at oral argument that they have no viable as-applied challenge against the FDOC and Sunny Ukenye.

them. Though Plaintiffs do not explicitly reference it as such,[10] their arguments make clear that they are raising a pre-enforcement constitutional challenge. Plaintiffs claim that they are entitled to raise such a challenge because they have raised a "question of fact" as to "[t]he County's *future intent* to enforce the Ordinance . . . ." Pls.' Reply [D.E. 64] at 5 (emphasis added). This, however, is not the standard applicable to Plaintiffs' pre-enforcement challenge. Rather, to demonstrate the existence of a case that is ripe for review, Plaintiffs must show "(1) that an actual threat of prosecution was made, (2) that prosecution is likely, or (3) that a credible threat of prosecution exists based on the circumstances." *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 1252 (11th Cir. 2012).[11]

Plaintiffs obviously have not identified an "actual threat of prosecution," and therefore, to demonstrate a "likely or credible threat," they "must show that there is 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.'" *Id.* (citing *Am. Civil Liberties Union v Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993)); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 (1979) ("persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate

---

[10] Plaintiffs do selectively cite to a few Supreme Court and Eleventh Circuit cases that have evaluated and permitted pre-enforcement challenges. Plaintiffs' citations to those cases, however, are selective and incomplete. For example, Plaintiffs cite *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 (1979) for the proposition that a person need not expose himself to arrest or prosecution before bringing a constitutional challenge to criminal statute. Pls.' Br. [D.E. 61] at 7. Plaintiffs, however, neglect to offer a full examination of *Babbitt*, which went on to note—as described below—that "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs" in a pre-enforcement challenge.

[11] Plaintiffs bringing pre-enforcement challenges also must show that the challenged law interferes with a constitutional right. *See GeorgiaCarry.org*, 687 F.3d at 1251. As described in the Court's order of dismissal, it is not at all clear that Plaintiffs have even shown this much.

12

plaintiffs" in a pre-enforcement challenge) (citations, quotations omitted). Plaintiffs have not shown, however that any John Doe faces a credible threat of prosecution or eviction under the Book Ordinance. John Doe #2 currently lives in the River Park with his probation officer's express permission. If anything, this indicates that John Doe #2 is facing a low or entirely nonexistent risk of prosecution. Plaintiffs do not even state where John Does #1 and #3 live, much less whether any particular aspects of their living arrangements indicate a credible threat that John Doe #1 or John Doe #3 will be prosecuted for violating the Book Ordinance.

The only facts identified by Plaintiffs that even arguably indicate a threat of prosecution are (1) the 2013 River Park eviction, (2) the discretion exercised by County officials in determining whether "alternative educational programs" such as the Miami Bridge are "schools" subject to the Book Ordinance's residency restriction, and (3) the fact that some County agencies appear to disagree with one another on whether certain facilities are "schools."[12] Taken together or on their own, however, these facts are insufficient to establish a credible threat of future prosecution. The 2013 River Park eviction, for example, did not involve any John Doe Plaintiff. Further, even assuming that the FDOC had previously evicted any of the John Doe Plaintiffs, and even assuming that this hypothetical eviction was prompted by the County's arbitrary interpretation of the Book Ordinance, "past exposure to illegal conduct does not in itself show a present case or controversy . . . ." *City of Los Angeles v. Lyons*, 103 S. Ct. 1660, 1665 (1983)

---

[12] Plaintiffs contend, for example, that the County and Miami-Dade Public Schools have reached contradictory positions on the definition of "school" under the Book Ordinance, despite the fact that the County claims to defer to Miami-Dade Public Schools on this point. According to Plaintiffs, Miami-Dade Public Schools officials consider the Miami Bridge and similar "alternative educational programs" to be "schools" subject to the Book Ordinance's residency restrictions, and yet, the County itself does not categorize those facilities as "schools." *See* Pls.' Br. [D.E. 61] at 4–5. Plaintiffs also allege that the Florida Department of Education considers numerous facilities to be "schools" that the County does not currently enforce as such, and vice versa. *Id.*

(citation, punctuation omitted). Rather, to establish "the prospect of future injury," a plaintiff previously subjected to a constitutional violation by a state actor must "credibly allege that he faced a realistic threat from the future application of [a defendant's] policy." *Id.* at 1667–68 n.7.

The Eleventh Circuit has since made clear that only the most compelling facts would demonstrate a threat of enforcement that was sufficiently realistic to merit the exercise of jurisdiction over a pre-enforcement challenge that, like Plaintiffs' proposed challenge, rests on an as-applied theory:

> Plaintiffs argue that the Carry Law, as applied to them, violates their constitutional rights, even though the Carry Law has not yet been applied to them. To us, this appears to be an inherent contradiction . . . . Even [assuming that] somehow it is possible to bring an as-applied challenge in a pre-enforcement review of a statute that has yet to be applied[,] we believe that there are few situations where that type of challenge would prevail. Such a situation could arise when the factual context of the challenge is so clear and uncontroverted that there is no question as to how the statute will be applied.

*GeorgiaCarry.org*, 687 F.3d at 1255 n.20. Plaintiffs have not identified a "factual context" where there is "no question" as to how the County will apply the Book Ordinance to them. At best, the facts presented by Plaintiffs indicate that, while the County currently does not enforce "alternative educational programs" as schools under the ordinance, some officials in County agencies believe (or believed in 2013) that it should. While they do not dispute that the County does not currently enforce these programs as schools, Plaintiffs nevertheless stress that officials' inconsistent views on the ordinance indicate that the County "could reverse course at any time."

Even if Plaintiffs' allegations are taken as true, this would be insufficient to support a pre-enforcement challenge that is ripe for review, as government officials' struggles to interpret a potentially vague law do not, on their own, support the present exercise of Article III jurisdiction. In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982), for

14

example, the Supreme Court examined a case in which municipal officials' confusion over an ordinance's specific meaning and application raised an apparent "risk of discriminatory enforcement." However, the Court refused to address this risk at the pre-enforcement stage. Instead, the Court noted that the municipality could adopt, through administrative regulations and public input, clarifications to the potentially overbroad provisions of the ordinance. *See id.* at 504. And, if the municipality ultimately undertook a potentially overbroad or arbitrary action to enforce the ordinance, "it will be time enough to consider any such problems when they arise." *Id.* (citing *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 52 (1966)). More recently, the Court held that public interest organizations could not establish an injury in fact[13] based on what the organizations alleged was an "objectively reasonable likelihood" that government officials would, in the future, exercise the discretion provided by the Foreign Intelligence Surveillance Act to illegally acquire the organizations' communications. *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1143 (2013). The Court reasoned that a plaintiff's uncertainty over a government agency's future and potentially arbitrary enforcement is insufficient to establish Article III standing, because a "threatened injury must be certainly impending to constitute injury in fact." *Id.* at 1147–48 (quoting *Whitmore v. Arkansas*, 110 S. Ct. 1717, 1724–25 (1990)).

Like the *Hoffman* and *Clapper* plaintiffs, whose claims were rejected by the Supreme Court for jurisdictional deficiencies, Plaintiffs here have at most identified a statute that might

---

[13] Though *Clapper* addressed the injury in fact requirement for Article III standing, rather than ripeness, it is nevertheless relevant here, as standing and ripeness issues frequently arise together in the context of pre-enforcement challenges. *See Dermer v. Miami-Dade County*, 599 F.3d 1217, (11th Cir. 2010) ("In cases involving pre-enforcement review, there is often 'doctrinal overlap between standing and ripeness analysis' because these claims 'involve the possibility of wholly prospective future injury.'") (quoting *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006)).

15

possibly be improperly enforced against them or others in the future. Indeed, Plaintiffs make clear that it is the *possibility*, and not the *certainty*, of enforcement that concerns them.[14] The Eleventh Circuit, however, has directed that only a "clear and uncontroverted" risk of enforcement would be ripe for review on an as-applied challenge. *GeorgiaCarry.org*, 687 F.3d at 1255 n.20. That is certainly not the case here. Therefore, while their uncertainty over Defendants' interpretation of the Book Ordinance may be frustrating for Plaintiffs, it does not give rise to a case that is ripe for adjudication under an as-applied theory. Rather, it indicates that any future arbitrary enforcement actions predicted by Plaintiffs would be best addressed if or when they arise.[15] *See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (ripeness doctrine "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes").

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Relief [D.E. 61] is hereby DENIED.

---

[14] Plaintiffs contend, for example, that the Book Ordinance's vagueness "prevents them from knowing" whether the County may exercise its discretion in a manner that subjects Plaintiffs to eviction or prosecution in the future; that neither they nor numerous other non-parties "know if Defendants may return to their doorsteps with eviction notices"; and that the uncertainty created by the Book Ordinance works a "chilling effect . . . on their attempts to identify housing." Pls.' Br. [D.E. 61] at 7–9.

[15] Though the Florida Action Committee is also a named Plaintiff in this case, Plaintiffs have scarcely addressed how their proposed as-applied challenge presents a live case or controversy as applied to it. Plaintiffs state, for the first time in their reply brief, that the Florida Action Committee "will be forced to expend resources helping covered individuals navigate this minefield." Pls.' Reply [D.E. 64] at 6. To actually establish organizational standing, however, Plaintiffs must show that (a) the Florida Action Committee's "members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Plaintiffs have not even attempted to demonstrate how the allegations in their amended complaint satisfy these three elements.

DONE AND ORDERED in Chambers, Miami, Florida, June 23, 2015.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of record