# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303



David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 27, 2017

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 15-14336-BB
Case Style: John Doe #1, et al v. Miami-Dade County, Florida, et al
District Court Docket No: 1:14-cv-23933-PCH

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 15-14336

_____

District Court Docket No.
1:14-cv-23933-PCH

JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
FLORIDA ACTION COMMITTEE, INC.,

                                      Plaintiffs - Appellants,

versus

MIAMI-DADE COUNTY,
FLORIDA DEPARTMENT OF CORRECTIONS,
SUNNY UKENYE,
Circuit Administrator for the Miami Circuit Office,
Florida Department of Corrections, in his full official capacity,

                                      Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 25, 2017
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna Clark

**ISSUED AS MANDATE 04/27/2017**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14336
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23933-PCH

JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
FLORIDA ACTION COMMITTEE, INC.,

                              Plaintiffs - Appellants,

versus

MIAMI-DADE COUNTY,
FLORIDA DEPARTMENT OF CORRECTIONS,
SUNNY UKENYE,
Circuit Administrator for the Miami Circuit Office,
Florida Department of Corrections, in his full official capacity,

                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 25, 2017)

Before TJOFLAT, WILSON, and JILL PRYOR, Circuit Judges.

WILSON, Circuit Judge:

We vacate our prior opinion, *Doe v. Miami-Dade Cnty.*, No. 15-14336, 2016 WL 5334979 (11th Cir. Sept. 23, 2016), and substitute the following opinion in its place.

Plaintiffs-Appellants John Doe #1, John Doe #2, John Doe #3, and the Florida Action Committee, Inc. (FAC) (collectively, the Plaintiffs), appeal the district court's dismissal of their ex post facto challenges to the residency restriction in Miami-Dade County's Lauren Book Child Safety Ordinance (the Ordinance). On appeal, the Plaintiffs argue that they pleaded sufficient facts to state a claim that the residency restriction is so punitive in effect as to violate the ex post facto clauses of the federal and Florida Constitutions. At this stage, we conclude that Doe #1 and Doe #3 have alleged plausible ex post facto challenges to the residency restriction. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I

On November 15, 2005, Miami-Dade County (the County) adopted the Ordinance, which imposes, *inter alia*, a residency restriction on "sexual offenders"

and "sexual predators."[1]  *See* Miami-Dade Cty., Fla., Code of Ordinances ch. 21, art. XVII.  The Ordinance prohibits a person who has been convicted of any one of several enumerated sexual offenses involving a victim under sixteen years of age from "resid[ing] within 2,500 feet of any school."  *Id.* § 21-281(a).  The 2,500-foot distance is "measured in a straight line from the outer boundary of the real property that comprises a sexual offender's or sexual predator's residence to the nearest boundary line of the real property that comprises a school," rather than "by a pedestrian route or automobile route."  *Id.* § 21-281(b).  There are three exceptions to the County's residency restriction: (1) "[t]he sexual offender or sexual predator established a residence prior to the effective date of th[e] [O]rdinance"; (2) "[t]he sexual offender or sexual predator was a minor when he or she committed the sexual offense and was not convicted as an adult"; and (3) "[t]he school was opened after the sexual offender or sexual predator established the residence."  *Id.* § 21-282(1).  Violations of the Ordinance are punishable by a fine up to $1,000, imprisonment for up to 364 days, or both.  *Id.* § 21-281(c).

On December 20, 2014, the Plaintiffs filed a complaint against the County, the Florida Department of Corrections, and the Florida Department of Corrections Miami Circuit Administrator, Sunny Ukenye, in his official capacity (collectively,

---

[1] The present text of the Ordinance is reproduced in the Appendix in relevant part.  Any differences between the 2005 version, which went into effect on November 25, 2005, and the present version of the Ordinance are immaterial to this appeal.

the Defendants), challenging the constitutionality of the County's residency restriction.  Specifically, the Plaintiffs challenged the County's residency restriction (1) as void for vagueness under the Fourteenth Amendment and the Florida Constitution; (2) as a violation of their substantive due process rights to personal security and to acquire residential property under the Fourteenth Amendment and the Florida Constitution; and (3) as an unconstitutional ex post facto law under the federal and Florida Constitutions.  The Defendants moved to dismiss, and the district court dismissed all the claims with prejudice under Federal Rule of Procedure 12(b)(6).  The Plaintiffs properly appealed only the dismissal of their ex post facto challenges against the County.

## II

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).

## III

Both the federal and Florida Constitutions prohibit the passage of ex post facto laws.  *See* U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1; Fla. Const. art. I, § 10.  An ex post facto law is a law that "appl[ies] to events occurring before its enactment" and that "disadvantage[s] the offender affected by it, by altering the

definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997) (internal quotation marks and citation omitted). In *Smith v. Doe*, the Supreme Court outlined a framework for determining whether Alaska's sex offender registration and notification requirements violated the federal Ex Post Facto Clause. *See* 538 U.S. 84, 92–93, 97, 123 S. Ct. 1140, 1146–47, 1149 (2003). We join our sister circuits in applying the *Smith* framework to evaluate an ex post facto challenge to a residency restriction on sexual offenders.[2] *See Doe v. Snyder*, Nos. 15-1536, 15-2346, 15-2486, slip op. at 5–7 (6th Cir. Aug. 25, 2016) (consolidated); *Shaw v. Patton*, 823 F.3d 556, 561–62 (10th Cir. 2016); *Doe v. Miller*, 405 F.3d 700, 718 (8th Cir. 2005).

The *Smith* Court noted that Alaska's statute was retroactive and applied the following framework to determine whether the statute violated the Ex Post Facto Clause:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.

---

[2] We evaluate both the federal and state ex post facto challenges under *Smith*. *See Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008).

538 U.S. at 92, 123 S. Ct. at 1146–47 (alteration adopted) (internal quotation marks and citations omitted).  After determining that the Alaska legislature intended to "create a civil, nonpunitive regime," the Court explained that several factors guide the second part of the analysis:

> whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose.

*See id.* at 96–97, 123 S. Ct. at 1149.[3]  Ultimately, the Court concluded that the Alaska statute was not punitive and, therefore, did not violate the Ex Post Facto Clause.  *See id.* at 105–06, 123 S. Ct. at 1154.

IV

The County does not contest that its residency restriction applies to individuals "convicted" of relevant sexual offenses before the passage of the Ordinance.  *See* Ordinance § 21-281(a); *Lynce*, 519 U.S. at 441, 117 S. Ct. at 896 (a statute is only retroactive if it "appl[ies] to events occurring before its enactment" (internal quotation mark omitted)).  Therefore, we accept for purposes

---

[3] None of the factors is dispositive and two other factors may be considered in the second step of the *Smith* framework: whether the regulatory scheme "comes into play only on a finding of scienter" and whether "the behavior to which it applies is already a crime."  *See Smith*, 538 U.S. at 97, 105, 123 S. Ct. at 1149, 1154.  However, the Court explained, these two factors carried little weight in the Court's analysis of the Alaska statute.  *See id.* at 105, 123 S. Ct. at 1154.

of this appeal that the residency restriction applies retroactively. Additionally, the Plaintiffs do not contest the County's assertion that the County intended the Ordinance to be civil and non-punitive. Therefore, we also accept for purposes of this appeal that the County intended to "create a civil, nonpunitive regime" under the first step of the *Smith* analysis. *See Smith*, 538 U.S. at 96, 123 S. Ct. at 1149.

Finally, only Doe #1 and Doe #3 have properly alleged that the County's residency restriction applied retroactively to them—that the restriction applied to their pre-enactment convictions for qualifying sexual offenses.[4] Accordingly, we need only decide whether Doe #1 and Doe #3 alleged sufficient facts to state a plausible claim that the County's residency restriction is so punitive in effect as to violate the federal and Florida ex post facto clauses under *Smith*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 129 S. Ct. 1937, 1949–50 (2009). We conclude they have done so.

The complaint sufficiently alleged that the County's residency restriction

---

[4] Construing the complaint in the light most favorable to the Plaintiffs, Doe #1 was convicted of his relevant sexual offense in 1992, and Doe #3 was convicted of his relevant sexual offense in 1999—both before the County's residency restriction was enacted in 2005. *See* Amended Complaint at ¶¶ 17, 48, *Doe v. Miami-Dade Cty.*, No. 1:14-cv-23933-PCH (S.D. Fla. Apr. 3, 2015) [hereinafter Amended Complaint]. Both are also "sexual offenders" under the Ordinance because they are residents of Miami-Dade County and are registered as sexual offenders. *Id.* at ¶¶ 14, 45; *see* Ordinance § 21-280(10) (citing Fla. Stat. § 943.0435).

However, Doe #2 only alleged that he was convicted of his relevant sexual offense in 2006. *See* Amended Complaint at ¶ 32. Thus, Doe #2 failed to allege that the County's residency restriction retroactively increased his punishment. Similarly, FAC—a non-profit corporation that works to reform the sexual offender laws in Florida—failed to allege that any of its members were convicted of, or even committed, a relevant sexual offense before November 15, 2005. *See id.* at ¶¶ 55–63.

imposes a direct restraint on Doe #1's and Doe #3's freedom to select or change residences. Under the "affirmative disability or restraint" factor, "we inquire how the effects of the [Ordinance] are felt by those subject to it." *See Smith*, 538 U.S. at 99–100, 123 S. Ct. at 1151 (internal quotation marks omitted). The Plaintiffs alleged in their complaint that the County's residency restriction severely limits housing options for individuals subject to the restriction, "drastically exacerbat[ing] transience and homelessness." *See* Amended Complaint at ¶ 74. Doe #1 and Doe #3 have specifically alleged that they are homeless and that their homelessness resulted directly from the County's residency restriction "severely restricting available, affordable housing options." *Id.* at ¶ 54; *accord id.* at ¶ 28. Doe #1 was twice instructed by probation officers to live at homeless encampments after the County's residency restriction made him unable to live with his sister and he could not find other housing compliant with the restriction. *See id.* at ¶¶ 18–28. He currently lives at a makeshift homeless encampment near "an active railroad track" (the Encampment).[5] *See id.* at ¶¶ 5, 25. Similarly, Doe #3 sleeps in his car at the Encampment because, "despite repeated attempts, he has been unable to obtain available, affordable rental housing in compliance with the Ordinance." *See id.* at ¶¶ 52–53.

---

[5] There are no restroom facilities, sanitary water, or designated shelter at the Encampment, which is technically on private property. *See id.* at ¶¶ 120–23.

8

Doe #1 and Doe #3 also sufficiently alleged that the County's residency restriction is excessive in comparison to its public safety goal of addressing recidivism.[6] *See Smith*, 538 U.S. at 105, 123 S. Ct. at 1154 (regulation is excessive if "[un]reasonable in light of [its] nonpunitive objective"). Accepting the facts alleged in the complaint as true, the County's residency restriction is "among the strictest in the nation." *See* Amended Complaint at ¶ 74. An individual becomes subject to the restriction based solely on the fact of his or her prior conviction for a listed sexual offense, without regard to his or her individual "risk of recidivism over time." *See id.* at ¶¶ 72–73. And the County's residency restriction applies for life, even after an individual no longer has to register as a sexual offender under Florida law and is no longer subject to the state law 1,000-foot residency restriction. *See id.* at ¶ 72. The County's residency restriction also applies "even if there is no viable route to reach the school within 2500 feet." *Id.* at ¶ 141. The County adopted this broad residency restriction even though "there is no evidence that residency restrictions have any impact on recidivism or public safety, or that an individual's residential proximity to a school, is a salient risk factor in sexual offending." *Id.* at ¶ 140.

---

[6] The stated intent of the Ordinance "is to serve the County's compelling interest to promote, protect and improve the health, safety and welfare of the citizens of the County, particularly children, by prohibiting sexual offenders and sexual predators from establishing temporary or permanent residence in certain areas where children are known to regularly congregate." The County made findings that, *inter alia*, "[s]exual offenders are extremely likely to use physical violence and to repeat their offenses." *See* Ordinance § 21-278.

The Plaintiffs further argue that the County's residency restriction not only fails to advance, but also directly undermines, the goal of public safety. The complaint stated that "[t]he only demonstrated means of effectively managing reentry and recidivism [of former sexual offenders] are targeted treatment, along with maintaining supportive, stable environments that provide access to housing, employment, and transportation," rather than by "[making] categorical assumptions about groups of former sexual offenders." *See id.* at ¶¶ 137, 143. The complaint also alleged that the transience and homelessness that the residency restriction causes undermine sexual offenders' abilities to successfully re-enter society and increase the risk of recidivism by "mak[ing] it more difficult for Plaintiffs and others to secure residences, receive treatment, and obtain and maintain employment." *See id.* at ¶¶ 146, 149. In light of the foregoing, we conclude that Doe #1 and Doe #3 have stated a plausible claim that the County's residency restriction is so punitive in effect as to violate the ex post facto clauses of the federal and Florida Constitutions.

V

Our role in reviewing the grant of a 12(b)(6) motion merely is to determine whether the plaintiffs stated a plausible claim, such that they should be permitted to proceed to discovery. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). Here, Doe #1 and Doe #3 alleged sufficient facts to

10

raise plausible claims that the County's residency restriction is so punitive in effect that it violates the ex post facto clauses of the federal and Florida Constitutions. Whether Doe #1 and Doe #3 ultimately prevail is a determination for a future stage of this litigation. Thus, we reverse the district court's grant of the County's motion to dismiss as to Doe #1 and Doe #3's ex post facto challenges and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Appendix

ARTICLE XVII. - THE LAUREN BOOK CHILD SAFETY ORDINANCE

Sec. 21-277. - Title.

Article XVII shall be known and may be cited as "The Lauren Book Child Safety Ordinance."

Sec. 21-278. - Findings and Intent.

(a) Repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Sexual offenders are extremely likely to use physical violence and to repeat their offenses. Most sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. This makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant.

(b) The intent of this article is to serve the County's compelling interest to promote, protect and improve the health, safety and welfare of the citizens of the County, particularly children, by prohibiting sexual offenders and sexual predators from establishing temporary or permanent residence in certain areas where children are known to regularly congregate, to prohibit renting or leasing certain property to sexual offenders or sexual predators if such property is located where children are known to regularly congregate and to restrict sexual offenders' and sexual predators' access to parks and child care facilities.

. . . .

Sec. 21-280. - Definitions.

The following terms and phrases when used in this article shall have the meanings ascribed to them in this section unless the context otherwise requires:

. . . .

(4) "Convicted" or "conviction" means a determination of guilt which is the result of a trial or the entry of a plea of guilty or nolo contendere, regardless of whether adjudication is withheld.  A conviction for a similar offense includes, but is not limited to: a conviction by a federal or military tribunal, including courts-martial conducted by the Armed Forces of the United States, and includes a conviction or entry of a plea of guilty or nolo contendere resulting in a sanction in any state of the United States or other jurisdiction.  A sanction includes, but is not limited to, a fine, probation, community control, parole, conditional release, control release, or incarceration in a state prison, federal prison, private correctional facility, or local detention facility.

. . . .

(7) "Permanent residence" means a place where a person abides, lodges, or resides for fourteen (14) or more consecutive days.

(8) "Reside" or "residence" means to have a place of permanent residence or temporary residence.

(9) "School" means a public or private kindergarten, elementary, middle or secondary (high) school.

(10) "Sexual offender" shall have the meaning ascribed to such term in Section 943.0435, Florida Statutes.

(11) "Sexual offense" means a conviction under Section 794.011, 800.04, 827.071, 847.0135(5) or 847.0145, Florida Statutes, or a similar law of another jurisdiction in which the victim or apparent victim of the sexual offense was less than sixteen (16) years of age, excluding Section 794.011(10), Florida Statutes.

(12) "Sexual predator" shall have the meaning ascribed to such term in Section 775.21, Florida Statutes.

(13) "Temporary residence" means a place where the person abides, lodges, or resides for a period of fourteen (14) or more days in the aggregate during any calendar year and which is not the person's permanent address, or a place where the person routinely abides, lodges, or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and which is not the person's permanent residence.

Sec. 21-281. - Sexual Offender and Sexual Predator Residence Prohibition; Penalties.

(a) It is unlawful for any person who has been convicted of a violation of Section 794.011 (sexual battery), 800.04 (lewd and lascivious acts on/in presence of persons under age 16), 827.071 (sexual performance by a child), 847.0135(5) (sexual acts transmitted over computer) or 847.0145 (selling or buying of minors for portrayal in sexually explicit conduct), Florida Statutes, or a similar law of another jurisdiction, in which the victim or apparent victim of the offense was less than sixteen (16) years of age, to reside within 2,500 feet of any school.

(b) The 2,500-foot distance shall be measured in a straight line from the outer boundary of the real property that comprises a sexual offender's or sexual predator's residence to the nearest boundary line of

the real property that comprises a school. The distance may not be measured by a pedestrian route or automobile route, but instead as the shortest straight line distance between the two points.

(c) Penalties. A person who violates section 21-281(a) herein shall be punished by a fine not to exceed $1,000.00 or imprisonment in the County jail for not more than 364 days or by both such fine and imprisonment.

Sec. 21-282. - Exceptions.

(1) A sexual offender or sexual predator residing within 2,500 feet of any school does not commit a violation of this section if any of the following apply:

   (a) The sexual offender or sexual predator established a residence prior to the effective date of this ordinance. The sexual offender or sexual predator shall not be deemed to have established a residence or registered said residence for purposes of this section, if the residence is an illegal multifamily apartment unit within a neighborhood zoned for single-family residential use.

   (b) The sexual offender or sexual predator was a minor when he or she committed the sexual offense and was not convicted as an adult.

   (c) The school was opened after the sexual offender or sexual predator established the residence.

(2) Section 21-282(1)(a) and (1)(c) herein shall not apply to a sexual offender or sexual predator who is convicted of a subsequent sexual offense as an adult after residing at a registered residence within 2,500 feet of a school.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 25, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14336-BB
Case Style: John Doe #1, et al v. Miami-Dade County, Florida, et al
District Court Docket No: 1:14-cv-23933-PCH

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion