**United States District Court**
**Southern District of Florida**
**Case No. 14-23933-Civ-Huck/McAliley**

| | |
|---|---|
| **John Doe #4**, et al., | |
| Plaintiffs, | |
| v. | |
| **Miami-Dade County,** | |
| Defendants. | |

**Miami-Dade County's Motion for Summary Judgment**

"The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). In recognition of this fact, the Miami-Dade County Board of County Commissioners enacted Ordinance No. 05-206 on November 15, 2005 with the stated intent of "serv[ing] the County's compelling interest to promote, protect, and improve the health, safety and welfare of the citizens of the County, particularly children, by prohibiting sexual offenders and sexual predators from establishing temporary or permanent residence in certain areas where children are known to regularly congregate." D.E. 123-1 at 6. Specifically, Ordinance No. 05-206 prohibited individuals convicted of certain sexual offenses with victims aged 15 years or younger from residing within 2,500 feet of any school in particular areas of Miami-Dade County under the premise that such restrictions "will reduce the amount of incidental contact sexual offenders and sexual predators have with children" and "reducing the amount of incidental contact will decrease the opportunity for sexual offenders or sexual predators to commit new sexual offenses against children." *Id.* at 5, 9.

Plaintiffs John Does #4-7 are all registered sexual offenders or predators who have committed acts that, in one form or another, validate the County's public safety concerns. Each of them was convicted of at least one sexual offense against a victim that was 15 years or younger. At least three of their victims were under the age of twelve. At the time of their qualifying offenses, the Plaintiffs ranged in age from 30 to 61. And the conduct alleged by their victims is more extensive than the offenses that they were ultimately charged and convicted for. Nevertheless, Plaintiffs claim that a restriction

that prohibits them from establishing a new residence within 2,500 feet of a school to reduce incidental contact between them and young children is excessively restrictive and amounts to punishment rather than public safety.

But, as explained further in this Motion for Summary Judgement and supported by the accompanying Statement of Material Facts, the County's residency restriction for sexual offenders and predators is a civil, non-punitive measure that is rationally related to legitimate public safety concerns of "surpassing importance"—the protection of the children in our community from sexual abuse. As such, summary judgment should be entered in Miami-Dade County's favor on Plaintiffs' sole remaining constitutional challenge to the County's residency restriction.

## Legislative Background

On November 15, 2005, Miami-Dade County enacted Ordinance No. 05-206, which prohibited individuals convicted of certain sexual offenses with victims aged 15 years or younger from residing within 2,500 feet of any school in particular areas of Miami-Dade County. D.E. 123 at ¶ 1-9. Under this version of the ordinance, the newly-enacted residency restriction only applied in unincorporated Miami-Dade County and in any municipality that did not opt out by adopting a resolution within 90 days providing that the ordinance would not apply in that municipality. *Id.* at ¶ 78. In addition, the residency restrictions did not apply to any sexual offender or predator that (1) had established their residence and registered it prior to the effective date of the ordinance; (2) was a minor when he or she committed the sexual offense and was not convicted as an adult; or (3) had established their residence prior to the school being opened. *Id.* at ¶ 75.

In 2010, the Board of County Commissioners found that the result of Ordinance No. 05-206's opt-out provision was to create "a patchwork of at least 24 separate municipal ordinances, which generally prohibit sexual offenders from living within 2,500 feet of schools, daycares, parks, playgrounds, and sometimes other points such as bus stops and other locations where children congregate." *Id.* at ¶ 79. As a result, almost all of the municipal ordinances effectively created zones in which sexual offenders were almost completely excluded from available housing in that municipality and thereby caused the unintended effect of shifting the only available housing for sexual offenders to the unincorporated areas of the County and to those cities that have not yet enacted sexual offender residency ordinances. *Id.* at ¶ 80-81.

To address this unintended consequence, the Board of County Commissioners enacted Ordinance No. 10-01 on January 21, 2010. *Id.* at ¶ 84. Ordinance No. 10-01 removed Ordinance No. 05-206's

opt-out provision and instead made it so that all municipal ordinances concerning sexual offender or predator residency restrictions were preempted. *Id.* at ¶ 88. Going forward, the County's residency restriction, which prohibits sexual offenders and predators from living within 2,500 feet of school only, would be in effect countywide. *Id.* The Board of County Commissioners found that this measure struck "a proper balance between protecting children around the crucial and vulnerable areas of schools **while still leaving available residential units in which sexual offenders can find housing**." *Id.* at 87 (emphasis added).

As of approximately February 2, 2018, based on cross-referencing various County datasets, there were an estimated 124,694 residential units in Miami-Dade County that lie outside the 2,500 foot buffer zone described in Miami-Dade County Code § 21-121(b). D.E. 123 at ¶ 91. According to 2010 Census Data for Miami-Dade County, there are more residential units in Miami-Dade County that lie outside the 2,500 foot buffer zone described in Miami-Dade County Code § 21-121(b) than there are housing units in the City of Coral Gables, Hialeah, and Homestead, **combined**. D.E. 123 at ¶ 93.

## Argument

At the start of this matter, this case had an entirely different set of plaintiffs and a significantly greater set of claims. *Compare* D.E. 1 *with* D.E. 90. Now, one pair of related claims remains: a facial challenge under the ex post facto clause of the U.S. and Florida Constitutions. As explained by the Supreme Court, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances* exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See also City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 790 ("[O]ur tradition has been to discourage facial challenges, and rather, to entertain constitutional attacks on local laws only as they are applied to litigants."). In this case, Plaintiffs cannot satisfy that burden on this factual record particularly in light of the fact that, on an ex post facto challenge, it is the Plaintiffs who also must demonstrate their entitlement to relief based upon the 'clearest proof.' For reasons further explained below, Plaintiffs' own testimony and other supporting evidence dooms their ability to pass these two heightened burdens. Accordingly, this Court should grant summary judgment in Miami-Dade County's favor.

### I. Plaintiffs' Claims are Barred by the Statute of Limitations

In their Second Amended Complaint, Plaintiffs assert that they "bring this action under 42 U.S.C. § 1983." D.E. 90 at ¶ 7. "Section 1983 claims are subject to a forum state's statute of limitations for

personal injury claims." *Hillcrest Property, LLC v. Pasco County*, 754 F.3d 1279, 1281 (11th Cir. 2014). In Florida, the statute of limitations for such claims is four years. *See id.* Here, Plaintiffs raise a facial challenge to an ordinance that was enacted in November 2005 and amended in January 2010. Yet, this lawsuit was not filed until October 23, 2014, more than four years after the enactment of either ordinance. *See* D.E.1. Moreover, none of the current Plaintiffs were even parties to this suit at that time. All of the current plaintiffs were added as additional parties in October 2017. D.E. 88-89.

In *Hillcrest Property, LLC*, the Eleventh Circuit considered a civil rights action brought pursuant to 42 U.S.C. § 1983 that asserted a facial substantive due process challenge to a county ordinance enacted in November 2005. 754 F.3d at 1280-81. The plaintiff in *Hillcrest Property, LLC*, however, did not file suit until April 7, 2010. *Id.* at 1281. As a result, the Eleventh Circuit found plaintiffs' facial challenge to be time-barred under the relevant 4-year statute of limitations for § 1983 claims in Florida. *Id.* at 1283. This holding resulted from the fact that the Eleventh Circuit deemed the plaintiff's claim to have accrued "at the time the ordinance was enacted" because any constitutional injury caused by the ordinance "should have been apparent to [plaintiff] upon the Ordinance's passage and enactment." *Id.*

Similarly, to the extent the Plaintiffs in this case claim that the County's ordinances have "retroactively increas[ed] their punishment," such alleged injury should have been apparent to Plaintiffs when the County's ordinances were enacted. Thus, the Plaintiffs had four years from the enactment of Ordinance No. 05-206 in November 15, 2005 or—at best—four years from the enactment of Ordinance No. 10-01 in January 2010 to bring their claim. They failed to meet either deadline. Accordingly, the Court should find Plaintiffs' claims to be time-barred and summary judgment should be entered in the County's favor.

## II. John Doe #7 Does Not Have Standing to Assert these Claims

"Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over 'Cases' and 'Controversies.' Accordingly, subject matter jurisdiction requires a justiciable case or controversy within the meaning of Article III. Standing constitutes one component of justiciability." *L.M.P. v. School Bd. Of Broward County*, 879 F.3d 1274, 1280 (11th Cir. 2018) (internal citations omitted). To establish standing, a plaintiff must demonstrate three criteria: (1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). In this case, John Doe #7—and his other fellow plaintiffs—seek declaratory and

4

injunctive relief such that Miami-Dade County would be prohibited "from enforcing the [residency restriction] against anyone whose qualifying offense occurred before the enactment of the ordinance." D.E. 90 at 20. However, John Doe #7 remains on probation for his qualifying offense until 2026. SEALED EX. 13 at 134.[1] And, as one of the conditions of his plea agreement, which remains in effect while he is on probation, John Doe #7 agreed that he would be prohibited from living within 2,500 feet of any school unless he came within one of the exceptions in MIAMI-DADE COUNTY CODE § 21-282. SEALED EX. 13 at 137. Because John Doe #7 would still be subject to the residency restrictions as part of his plea agreement until 2026, he cannot demonstrate today that he has a "likelihood that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Therefore, John Doe #7 lacks standing to proceed with this claim. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Failure to satisfy any of these three requirements [for standing] is fatal.").

### III. The Residency Restriction Does Not Violate the Ex Post Facto Clause

The Plaintiffs' sole remaining claim is that the County's civil, statutory scheme to protect the health, safety, and welfare of children in the community is instead an unconstitutional ex post facto law by "retroactively increasing an individual's punishment above that authorized by the law in effect at the time the offense was committed." D.E. 90 at ¶ 121. The Supreme Court in *Smith v. Doe* outlined the framework for analyzing such claims:

> We must first ascertain whether the legislature meant the statute to establish 'civil' proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'

538 U.S. 84, 92-96 (2003) (internal quotations and citations omitted). In *Smith*, the Supreme Court rejected an ex post facto challenge to an Alaska statute requiring sexual offenders to register their residences and held that "the intent of the Alaska Legislature was to create a civil, nonpunitive regime." *Id.* at 96.

As an initial matter, there is no dispute that Miami-Dade County intended to enact a civil, non-punitive statutory scheme to protect the public. This is evinced by the very language of the ordinance which states that the intent "is to serve the County's compelling interest to promote, protect and

---

[1] Notations to "SEALED EX." refer to the corresponding exhibits that were recently filed under seal to accompany this Motion and the Statement of Material Facts.

improve the health, safety, sand welfare of the citizens of the County, particularly children . . ." D.E. 123-1. As the Supreme Court held in *Smith*, "where a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith*, 538 U.S. at 93-94 (quoting *Flemming v. Nestor*, 363 U.S. 603, 616 (1960) (internal marks omitted).

Plaintiffs thus only take issue with whether the ordinance is "so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Smith*, 538 U.S. at 92. In making that determination, the Supreme Court in *Smith* articulated five factors to consider: (1) whether the civil regulation involves an affirmative disability or restraint; (2) whether the civil regulation has historically been regarded as a punishment; (3) whether the civil regulation's operation will promote the traditional aims of punishment—retribution and deterrence; (4) whether the civil regulation has a rational connection to an alternative, nonpunitive purpose; and (5) whether the civil regulation appears excessive in relation to the alternative purpose assigned. *Id.* at 97 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963)).[2] And, when analyzing these factors, the Supreme Court has directed that "**only the clearest proof** will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92 (emphasis added) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) and *Hudson v. United States*, 522 U.S. 93, 100 (1997)). *See also United States v. W.B.H.*, 664 F.3d 848, 855 (2011) ("We take the [Supreme] Court at its word: some evidence will not do; substantial evidence will not do; and a preponderance of the evidence will not do. '[O]nly the clearest proof' will do.").

It is under this framework that many federal courts, including the Seventh, Eighth, and Tenth Circuit, have upheld statutes that imposed residency restrictions on sexual offenders similar to those imposed by Miami-Dade County's ordinance against an ex post facto challenge. *See Vasquez v. Foxx,* ___ F.3d ___, 2018 WL 3372403 (7th Cir. July 11, 2018)*; Doe v. Miller*, 405 F.3d 700, 718-23 (8th Cir. 2005); *Weems v. Little Rock Police Dept.*, 453 F.3d 1010 (8th Cir. 2006); *Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016). *See also Wallace v. New York*, 40 F. Supp. 3d 278 (E.D.N.Y. 2014); *McGuire v. Strange*, 83 F. Supp. 3d 1231 (M.D. Ala. 2015). And, for the same reasons expressed in the persuasive analysis in

---

[2] Because the Florida Supreme Court has expressly adopted this same multi-factor balancing test for analyzing ex post facto claims under the Florida Constitution, *see Lescher v. Fla. Dep't of Highway Safety and Motor Vehicles*, 985 So.2d 1078, 1081-83 (Fla. 2008), Miami-Dade County will rely on the same analysis to explain why summary judgment should be granted on both remaining claims.

those decisions, Miami-Dade County's residency restriction is a civil remedy rather than an ex post facto criminal penalty.

### A. The Ordinance is Not An Affirmative Disability or Restraint

When analyzing whether the County's ordinance is an affirmative disability or restraint, courts are "to inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." Smith, 538 U.S. at 99-100. Here, there is no dispute that the residency restrictions imposed by the ordinance are less severe than imprisonment, which the Supreme Court found to be "the paradigmatic affirmative disability or restraint." *Id.* at 100.

First, the ordinance only imposes a restriction on where a registered sexual offender or predator can establish a *new* residence. D.E. 123-1 at 9. Under the ordinance's grandfather provision, all sexual offenders and predators were entitled to remain at their existing residence when the ordinance went into effect. *See id.* And all offenders and predators who establish a new compliant residence after the ordinance's enactment are also permitted to stay at that residence even if a new school is built nearby. *See id.* at 10. By virtue of this grandfather provision, Miami-Dade County's residency restrictions are also "less disabling than other state laws that have required offenders to relocate if they live in an area that has been compliant but became non-compliant because of an intervening opening of a nearby school, playground, park, or child care center."[3] *Shaw*, 823 F.3d at 570 (citing to other state laws imposing stricter residency restrictions). And, in August 2008, the Miami-Dade County Sexual Predator and Offender Unit issued a report that estimates that there were approximately 617 offenders and predators who were grandfathered in under this exemption at that time. D.E. 123 at ¶ 77.

In fact, the record indicates that John Doe #4 and #6 were beneficiaries of this very exemption and lived in residential housing pursuant to the grandfather provision for years after the ordinance was in effect. *See id.* at ¶¶ 104-106, 172-174. In addition, John Doe #4—after being homeless for six months following his eviction from his prior residence—was able to obtain compliant housing and lived there for approximately 5 years. *Id.* at ¶¶ 113-114. The deposition testimony from John Doe #4 and #6 also establishes that neither plaintiff lost any of this housing by virtue of the Ordinance or any circumstances attributable to Miami-Dade County. Instead, both John Doe #4 and #6 were forced to

---

[3] In addition to not requiring sexual offenders to relocate, the Miami-Dade County residency restriction only applies to schools and does not extend, as in other local ordinances or state laws, to playgrounds, parks, child care centers, bus stops or other locations where children congregate. D.E. 123-16 at 38:12-39:4.

7

leave their residences when they either (1) became unable to make rent after their spouse or roommates had left or (2) their landlord declined to renew their lease after finding out about their criminal history. *Id.* at ¶¶ 106-109, 113-117, 176. And, as for John Doe #5 and 7, the record shows that both of those plaintiffs were living with family members immediately prior to being incarcerated for multiple year sentences and, once released, their prior housing situation was no longer available. *Id.* at ¶¶ 137-142, 205-206.

Second, Plaintiffs' allegations that the Ordinance "has directly caused [their] homelessness by severely restricting [their] housing options," D.E. 90 at ¶¶ 36, 47, 56, 67, is belied by the record. Plaintiffs' homelessness, by their own admission, was primarily caused by other factors such as loss of roommates, a lack of income, marital separation, landlords unwilling to renew leases, and imposing limitations on housing beyond those provided for in the ordinance. *See infra*. For example, John Doe #4's homelessness was caused by his inability to afford either of his prior residences after his wife left or his roommate left to Nicaragua and his brother went back to prison for attempted bank robbery. D.E. 123 at ¶¶ 115-117. John Doe #5 stated that he received no income other than food stamps from 2014 to May 2017 and therefore did not have the means to afford any housing on his own. *Id.* at ¶ 144. He also stated that (1) he had found a compliant residence that was rented out to someone else before he could act on it, and (2) he has not looked for any available housing in the southern half of the County. *Id.* at ¶ 155-157. John Doe #6 noted that he was forced to leave his Surfside residence after his landlord found out about his criminal history and did not renew his lease. *Id.* at ¶ 175. He also stated that he was given a map showing areas in Miami-Dade County where there are compliant addresses, but that he has eliminated those locations from consideration because they are too far from his work. *Id.* at ¶ 189. John Doe #7 stated that the biggest impediment to his housing search is the fact that he receives no income other than food stamps and he cannot spend any money on housing. *Id.* at ¶¶ 208, 214. In fact, John Doe #7 noted that his probation officer had given him a potential compliant address, but he could not act upon it because he did not have any money for rent. *Id.* at ¶ 211. He also stated that (1) he has been denied housing on multiple occasions by potential landlords due to his criminal history and (2) finding landlords who are willing to rent to sexual offenders is a problem shared by all offenders. *Id.* at ¶ 210, 213.

Based on this testimony, Plaintiffs cannot substantiate by the ***clearest proof*** required for an ex post facto challenge that an affirmative disability or restraint akin to punishment has been imposed by the County's residency restriction. Instead, these facts show that Plaintiffs cannot establish that their difficulty in obtaining housing "would not have otherwise occurred" due to their personal or financial

circumstances. *Smith*, 538 U.S. at 100 (rejecting ex post facto claim on ground that there was "no evidence that the Act has led to substantial occupational or housing difficulties for former sex offenders that would not otherwise occurred through the use of routine background checks by employers and landlords").

Third, the County's residency restrictions are not only less restrictive than many comparable laws in other local or state jurisdictions; the residency restrictions are also far less restrictive than other public safety measures that have been held to be non-punitive. For example, in *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997), the Supreme Court held that the Kansas Sexually Violent Predator Act, which established procedures for the civil commitment of certain sexual offenders after they had served their criminal sentences, did not violate the ex post facto clause because detention of mentally unstable individuals was a "legitimate nonpunitive governmental objective." *See also id.* at 363 (holding that the imposition of an affirmative restraint "does not inexorably lead to the conclusion that the government has imposed punishment."); *Hudson*, 522 U.S. 93 (holding that a statute providing for occupational debarment of certain individuals after they had served their sentence did not constitute punishment).

Additionally, the manner by which the County has enforced its residency restriction further supports a finding that the residency restriction—as it is "felt by those subject to it," *Smith*, 538 U.S. at 99—is not a severe disability or restraint. In the case of John Doe #6, for example, he has shown up on multiple occasions to his mandatory sexual offender registration appointments and registered addresses that were not compliant with the residency restriction. When those addresses were registered, John Doe #6 would be advised that these new addresses were not in compliance with the County's residency restriction, he would sign an affidavit acknowledging as much, and he was directed to try to find compliant housing within 5 days or be potentially subject to enforcement action. D.E. 123 at ¶ 179. John Doe #6 was never arrested for an ordinance violation or for simply living at these addresses. *Id.* at ¶ 180.

For those reasons, Miami-Dade County's residency restrictions are not sufficiently harsh to constitute an affirmative disability or restraint that has a punitive effect.

### B. Residency Restrictions for Sexual Offenders Have Not Been Historically Regarded as Punishment

For the second *Smith* factor, the Supreme Court has instructed that "[a] historical survey can be useful because a State that decides to punish an individual is likely to select a means deemed punitive

in our tradition, so that the public will recognize it as such." *Smith*, 538 U.S. at 97. In this case, Miami-Dade County first enacted its residency restriction in 2005. D.E. 123-1. At that time, residency restrictions were "relatively new and somewhat unique", *Miller*, 405 F.3d at 720, and Miami-Dade County was "part of essentially the first wave of these laws going into effect." D.E. 123-16 at 62:1-4. As recognized by the Supreme Court, the fact that residency restrictions, generally, were "of fairly recent origin" at the time of the Ordinance No. 05-206's enactment "suggests that the [ordinance] was not meant as a punitive measure or, at least it did not involve a traditional means of punishing." *Smith*, 538 U.S. at 97.

Notwithstanding this fact, Plaintiffs have previously contended that the County's residency restriction is akin "to the historical criminal punishment of banishment and probation." D.E. 60 at 13. This historical analogy, however, is simply erroneous based upon the plain language of the ordinance and the factual record.

First, banishment, under historic common law, "entailed the inability to ever return to the place from which an individual had been banished." *Miller*, 405 F.3d at 719; *Shaw*, 823 F.3d at 565 ("The common feature of banishment, throughout the ages, has been the complete expulsion of an offender from a community."). The County's residency restriction, on the other hand, provides no comparable degree of expulsion from the community. By its very terms, the County's residency restriction provides no limitation on where sexual offenders and predators may travel or work within Miami-Dade County.[4] D.E. 123-1 at 10. And, even with respect to residences, sexual offenders and predators are free to live where they choose as long as it is not within 2,500 feet of a school. *Accord Vasquez*, 895 F.3d at 521 ("The Illinois residency statute merely keeps child sex offenders from living in very close proximity to places where children are likely to congregate; it does not force them to leave their communities.")

Moreover, Plaintiffs' banishment analogy is even further undone by the grandfather provision in the Ordinance and the County's preemption in 2010. Under the grandfather provision, every registered sexual offender that committed their sexual offenses prior to the ordinance's enactment was

---

[4] For that same reason, Plaintiffs efforts to analogize the residency restrictions to the control and supervision of probation similarly fails. *See Smith*, 538 U.S. at 101 (noting that a registration and notification scheme was not similar to probation because offenders were "free…to live and work as other citizens, with no supervision."); *Vasquez*, 895 F.3d at 521 ("Although the Illinois residency restrictions limit where sex offenders may live, the statute does not control any other aspect of their lives and thus does not resemble the comprehensive control of probation and supervised release.").

10

permitted to remain in their existing residence. *Id.* at 9. And any registered sexual offender who establishes a compliant residence prior to a school being opened nearby is also exempt from the residency restriction. *Id.* at 10. By definition, this provision has the effect of keeping individuals in their current residences in Miami-Dade County—the very opposite of what is intended by banishment.

Similarly, the legislative findings made by the Board of County Commissioners when enacting Ordinance No. 10-01 demonstrate that the County's intent was contrary to any desire to effectively banish sexual offenders from the community. In Ordinance No. 10-01, the County recognized that allowing a patchwork of 24 different municipal ordinances to govern residency restrictions in municipalities tended to leave sexual offenders "almost completely excluded from available housing" in those municipalities. As a result, the Board of County Commissioner opted to preempt and repeal all relevant municipal ordinances and have the County's 2,500 foot restriction from only schools apply countywide in order to "strike a proper balance between protecting children around the crucial and vulnerable areas of schools *while still leaving available residential units in which sexual offenders can find housing*." D.E. 123-23 at 5 (emphasis added). Thus, it defies credulity to suggest that the County chose to repeal more restrictive residency restrictions and create more housing availability for sexual offenders in an effort to effectively banish them.

Second, while the County's residency restriction does not resemble a historical form of punishment, it does bear a far closer relation to other state and local laws that are purely non-punitive in nature. For example, both Florida law and the Miami-Dade County Code require that certain establishments maintain a sufficient distance from schools. Fla. Stat. § 847.0134 provides that certain adult entertainment venues may not be located within 2,500 feet of a public or private elementary, middle, or secondary school.[5] MIAMI-DADE COUNTY CODE § 33-150 provides that, unless approved as a special exemption, "no premises shall be used for the sale of alcoholic beverages to be consumed on or off premises where the structure or place of business intended for such use is located less than [2,500] feet from a church or public school." And MIAMI-DADE COUNTY CODE § 33-259.1(d) provides that unless approved as a special exception, no adult bookstore, adult theater, adult entertainment club, adult video store, massage establishment, adult modeling establishment, and encounter studio shall be permitted "within one thousand (1,000) feet of a private school …, public school, church, public park, public library, day care center or nursery for children."

---

[5] The Board of County Commissioners explicitly referenced Fla. Stat. § 847.0134 in the legislative findings for Ordinance No. 05-206. D.E. 123-1 at 5.

Consequently, the County's residency restriction does not resemble the historical use of banishment or probation, and this factor should also weigh in the County's favor.

### C. Residency Restrictions Do Not Promote Punishment's Traditional Aim of Retribution

When analyzing whether the civil regulation promotes the traditional aims of punishment, "the [Supreme] Court strictly limited the scope of this inquiry, asking only whether the law is retributive." *Vasquez*, 895 F.3d at 522 (citing to *Smith*, 538 U.S. at 102). The reason for this limitation is that the other traditional aim of punishment—deterrence—"is not unique to punishment, for any civil regulation likely has some deterrent effect." *Shaw*, 823 F.3d at 570. *Smith*, 538 U.S. at 102 ("Any number of governmental programs might deter crime without imposing punishment."). Here, the County's residency restriction has a clear aim to promote deterrence of future crimes against children. However, "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' … would severely undermine the Government's ability to engage in effective regulation. *Hudson*, 522 U.S. at 105. Further, any suggestion that the County's residency restrictions have a retributive effect is, once again, undermined by the grandfather provision in the Ordinance and the County's preemption in 2010. *See supra* at III(b). *Accord Vasquez*, 895 F.3d at 522 (finding that "the residency restrictions are so clearly *not* retributive" because "the obvious aim of the statute is to protect children from the danger of recidivism by convicted child sex offenders") (emphasis in original).

### D. Residency Restrictions Have a Rational Connection to a Non-Punitive Purpose

The next factor outlined in *Smith* asks whether the law "has a rational connection to a non-punitive purpose" and the Supreme Court recognized this factor as "a most significant factor in our determination that the statute's effects are not punitive." *Smith*, 528 U.S. at 102. Here, the County's residency restriction has an indisputable non-punitive purpose of protecting children by diminishing the risk that they will be victims of repeat sexual offenses.[6] Moreover, the importance of that public safety concern cannot be understated. "Long-term studies show that sexual abuse is 'grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or human society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407,

---

[6] In *Ferber*, 458 U.S. at 757, the U.S. Supreme Court recognized this purpose as "a government objective of surpassing importance."

12

468 (2008) (Alito, J., dissenting) (quoting C. Bagley & K. King, *Child Sexual Abuse: The Search for Healing* 2 (1990)). *See also* D.E. 123 at ¶¶ 11-19, 51-52. In addition to justified concerns for child safety, Miami-Dade County is also entitled to have well-founded fears about the particular risk presented by convicted sexual offenders. *See McKune v. Lile,* 536 U.S. 24, 33 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *Smith*, 538 U.S. at 103 (noting "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class," and that "[t]he risk of recidivism posed by sex offenders is frightening and high.") (quotation marks omitted). *See also* D.E. 123 at ¶¶ 20-48.

Given both the concern for child safety and the fear of offender risk, it is certainly rational for Miami-Dade County to decide that (1) prohibiting sexual offenders and predators from living within 2,500 feet of schools will reduce the incidental contact that offenders and predators have with children and (2) reducing the amount of incidental contact will decrease the opportunity for sexual offenders or sexual predators to commit new sexual offenses against children. *See Weems*, 453 F.3d at 1015 ("[W]e believe that a residency restriction designed to reduce proximity between the most dangerous offenders and locations frequented by children is within the range of rational policy options available to a [local government] charged with protecting the health and welfare of its citizens"); *Doe v. Baker*, No. 1:05-cv-2265, 2006 WL 905368 at *5 (N.D. Ga. Apr. 5, 2006) ("Prohibiting a sex offender from living near a school or daycare is certainly an appropriate step in achieving the ultimate goal of protecting children."); *Shaw*, 823 F.3d at 574 ("[R]esidency restrictions are rationally designed to reduce sex offenders' temptations and opportunities to re-offend."). Additionally, the rational connection between policy and purpose is further strengthened by the record evidence included in Miami-Dade County's Statement of Material Facts.

For example, a 2001 study titled *The Geographic Link Between Sex Offenders and Potential Victims: A Routine Activities Approach* ("Walker (2001)") found evidentiary support for "the argument that child sex offenders are choosing to live in areas where there are concentrations of potential victims" and "[p]art of the variation in the residency patterns of child sex offenders … is no doubt attributable to them putting themselves in close proximity to potential targets, perhaps in hopes that their routine activities will overlap with the routine activities of potential victims." D.E. 123 at ¶ 53-61. Additionally, survey data from a 2011 report titled *North Carolina Sexual Offender Legislation: Policy Placebo?* ("Page (2011)") revealed that, among a sample of adult sexual offenders, 28.1% admitted that they were more able to manage risk factors because they cannot live near a school/day care, 31.6% admitted that

residence restrictions were effective in limiting their access to children, 22.2% thought that residence restrictions helped prevent them from reoffending, and 35.9% thought that residence restrictions help protect children from sexual offenders. D.E. 123 at ¶ 63. And John Doe #6 also testified that one of the techniques that he has learned in sex offender treatment is to not put himself in situations where he can get urges towards children and this includes staying away from schools. D.E. 123 at ¶ 65 (JOHN DOE #6: "Like if I walk by a school the only purpose I'm going to walk by a school is to walk by a school to get to where I'm trying to go. I'm not going to let my mind wander, 'Oh, Geez I wonder what's going on in this school.'").

There is also a rational connection between the selected distance of 2,500 feet and the purpose of child safety. First, 2,500 feet is less than the distance that the State Board of Education has determined constitutes a reasonable walking distance from a school and, therefore, Miami-Dade County Public Schools does not provide bus transportation for students living within that distance of a school. *Id.* at 68-70. Second, when Miami-Dade County is planning infrastructure improvements to make it safer and easier for children to walk or bicycle to and from school, its primary focus is on the area within 0.5 miles (or approximately 2,500 feet) from the school because it reasons that the highest concentration of students who walk or bicycle to school will come from that distance. *Id.* at ¶¶ 71-74. Third, state and local laws had already prohibited certain venues from being located within a 2,500 of a school. *See* FLA STAT. 847.0134; MIAMI-DADE COUNTY CODE § 33-150.

Although Plaintiffs allege that "the efficacy of the Ordinance's residency restrictions is particularly suspect," D.E. 90 at ¶ 109, their assessment of the effectiveness of the County's policy decision is not a legally relevant consideration on an ex post facto challenge. In *Smith*, the Supreme Court made clear that "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the non-punitive aim it seeks to advance." 538 U.S. at 103. If that were to be the case, then courts and litigants would become the final arbiters of effective public policy rather than duly elected officials.

Instead, this Court should follow *Smith* and limit its inquiry to simply deciding whether the ordinance's non-punitive purpose is "a sham or mere pretext." 538 U.S. at 103 (quoting *Hendricks*, 521 U.S. at 371 (Kennedy, J., concurring)). And that hurdle is one that Miami-Dade County's residency restriction easily clears. Even putting aside the considerable evidence of non-punitive legislative intent, *see* D.E. 123 at ¶¶ 1-10, 66-89, and the studies substantiating those concerns, *see id.* at ¶¶ 11-65, the Supreme Court's own precedent forecloses any possibility of finding that a policy intended to protect children from sexual abuse is a "sham or pretext." *See Smith*, 538 U.S. at 93 (holding that "an imposition

14

of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate non-punitive governmental objective and have been historically so regarded.'"); *Ferber*, 458 U.S. at 757.

For those reasons, this Court should find that the "most significant" factor in the ex post facto analysis weighs in Miami-Dade County's favor and, thus, summary judgment should be granted.

### E.  Residency Restrictions are Not Excessive in Relation to Their Purpose

The final factor to analyze under *Smith* is whether the ordinance is excessive with respect to its purpose. As to this factor, Plaintiffs make numerous allegations that essentially amount to a passionate policy disagreement with Miami-Dade County as to effectiveness of its ordinance. *See, e.g.,* D.E. 90 at ¶¶ 101-120. But "[t]he excessiveness inquiry of our ex post facto jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem is seeks to remedy." *Smith*, 538 U.S. at 105. Instead, "the question is whether the regulatory means chosen are **reasonable** in light of the nonpunitive objective." *Id.* (emphasis added). Based upon both precedent and the factual record, Miami-Dade County's policy is clearly reasonable.

First, the legislative findings in Ordinance No. 01-01 explicitly state that the Board of County Commissioners preempted the more restrictive municipal ordinances to "balance[e] the interests of people impacted by the residency restriction ordinances … while still providing protections over and above the protection provided by State law." D.E. 123 at ¶ 86. And, in that vein, the Board determined that the County's restriction "which prohibits sexual offenders from living within 2,500 feet of schools only," "strikes the proper balance between protecting children around the crucial and vulnerable area of schools while still leaving available residential housing units in which sexual offenders can find housing." *Id.* at ¶ 87. That evinces a clear desire to implement reasonable regulation and is hardly the type of action that a local government intending to act excessively would take.

Second, the County included a grandfather provision in its residency restrictions thereby making it "less disabling than other state laws that have required offenders to relocate if they live in an area that has been compliant but became non-compliant because of an intervening opening of a nearby school, playground, park, or child care center." *Shaw*, 823 F.3d at 570 (citing to other state laws imposing stricter residency restrictions). *See also Wallace*, 40 F. Supp. 3d at 326 (noting that a "grandfather clause" mitigated "any excessiveness relating to the lifetime application of these restrictions"). And, by only limiting its residency restrictions to schools, Miami-Dade County focused its concern on a vulnerable location where large amounts of children congregate, a fair amount of whom may walk home unaccompanied by an adult. *See* D.E. 123-16 at 38:12-39:4 (acknowledging

15

existence of residency restrictions in other jurisdictions that placed buffer zones of 2,500 feet around schools plus playgrounds, parks, child care centers, bus stops or other locations where children congregate).

Third, Plaintiffs take issue with the fact that the County's "residency restriction applies for life, without regard to an individual's risk of recidivism over time." D.E. 90 at ¶ 79. As an initial matter, however, *Smith* explicitly held that "[t]he Ex Post Facto Clause does not preclude a State from making categorical judgments that convictions of specified crimes should entail particular regulatory consequences." 538 at 103-04 (noting that the Supreme Court "has upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicting of crimes without any corresponding risk assessment"). And, even more specifically as to sexual offenders, *Smith* held that "the [government's] determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause." *Id.*

But, even if those holdings were not dispositive, the County's policy decision is reasonable in light of the record. Prentky (1997), for example, found that "[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release; child molesters in this sample reoffended as late as 20 years following release," D.E. 123 at ¶ 37, *See also id.* at ¶ 45 (stating that the findings in Langevin (2004) "suggest[] that sexual offending behavior remains a significant problem throughout the sex offenders' adult lives"); H.R. CONF. REP. 108-66 at 49-50 (2003) (noting concern by Federal judges and prosecutors that the criminal conduct "for the perpetrators of child sexual abuse … may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison"); D.E. 123-16 at 40:10-15 (recognizing that pedophilia is a disorder that can persist for life). Given this evidence, it is reasonable for Miami-Dade County to have concerns about the potential lifetime recidivism risk of individuals previously convicted of sexual offenses against young children.

Moreover, Plaintiffs' emphasis on individualized risk ignores the narrow tailoring done by Miami-Dade County on the front end to have its residency restriction only apply to individuals who committed certain sexual offenses against certain victims—specifically those who present the greatest danger to children. Unlike residency restrictions in other jurisdiction, Miami-Dade County does not subject every registered sexual offender to a residency restriction. *See, e.g., Wallace*, 40 F.Supp.3d at 326 (citing cases upholding residency restrictions that applied to any sexual offender). Instead, Miami-Dade County only applies its residency restriction to an individual convicted of one of five enumerated

16

sexual offenses where the victim was a minor aged 15 or younger. *See* MIAMI-DADE COUNTY CODE § 21-281(a). If the intent of Miami-Dade County's residency restriction is to protect children from being victims of sexual abuse—and it is—then this narrow category of individuals subject to the restriction is clearly reasonable. *See* D.E. 123-5 at 268:23-25 ("The second rule of psychology is the best predictor of future behavior is past behavior"); *Smith*, 538 U.S. at 103 ("[A government] could conclude that a conviction for a sex offense provides evidence of substantial risk of recidism"). And Miami-Dade County's reliance on a prior conviction against a minor victim aged 15 years or younger is even more reasonable in light of the fact that Plaintiffs' own expert witness acknowledges that "[t]here is no risk assessment tool in common usage or that has come to any sort of prominence in the relevant academic literature that is specifically designed to measure recidivism risk for sex offenses against children." D.E. 123 at 49.

Given that the residency restriction reasonably promotes Miami-Dade County's legitimate interest in public safety, Plaintiffs' claims should be dismissed because, given this record, they cannot establish by the "clearest proof" that this residency restriction is excessive in relation to that legitimate regulatory purpose. Thus, the County's residency restriction is nonpunitive and regulatory and should not be considered retroactive criminal punishment. *See Miller*, 405 F.3d at 723.

## Conclusion

For the foregoing reasons, Miami-Dade County asks this Court to recognize that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded,'" and therefore summary judgment should be granted in its favor. *Smith v. Doe*, 538 U.S. 84, 93 (2003) (internal citation omitted).

Dated: August 8, 2018                    Respectfully submitted,

                                                                          ABIGAIL PRICE-WILLIAMS
                                                                          Miami Dade County Attorney
                                                                          Stephen P. Clark Center
                                                                          111 N.W. 1st Street, Suite 2810
                                                                          Miami, Florida 33128

                                                                          By: */s/ Michael B. Valdes*
                                                                          Michael B. Valdes
                                                                          Assistant County Attorney
                                                                          Florida Bar No. 93129
                                                                          Phone: (305) 375-5151
                                                                          Fax:    (305) 375-5634
                                                                          E-Mail: mbv@miamidade.gov

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on August 8, 2018 on all counsel or parties of record in the manner indicated on the Service List below.

/s/ Michael B. Valdes
Assistant County Attorney

## Service List

| **Counsel for Plaintiffs** | **Counsel for Miami-Dade County** |
|---|---|
| Daniel B. Tilley and Nancy Abudu<br>ACLUE Foundation of Florida<br>4500 Biscayne Boulevard, Suite 340<br>Miami, FL 33137<br>Telephone: (786) 363-2714<br>Fax: (786) 363-1257<br>E-mail: dtilley@aclufl.org; nabudu@aclufl.org<br><br>Brandon J. Buskey and Ezekiel Edwards<br>American Civil Liberties Union Foundation<br>Criminal Law Reform Project<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Telephone: (212) 284-7364<br>Fax: (212) 549-2654<br>E-mail: bbuskey@aclu.org; eedwards@aclu.org<br><br>Jeffrey M. Hearne and Daniel R. Quintian<br>Legal Services of Greater Miami, Inc.<br>4343 W. Flagler Street, Suite 100<br>Miami, Florida 33134<br>Telephone: (305) 576-0080<br>Fax: (305) 573-5800<br>Email: jhearne@legalservicesmiami.org;<br>drowinsky@legalservicesmiami.org<br><br>Valerie Jonas<br>Weitzner & Jonas, P.A.<br>1444 Biscayne Blvd., Suite 207<br>Miami, FL 33132<br>E-mail: valeriejonas77@gmail.com<br><br>*Electronic Service* | Michael B. Valdes and Oren Rosenthal<br>Assistant County Attorney<br>Miami-Dade County Attorney's Office<br>111 N.W. 1st Street, Suite 2810<br>Miami, Florida 33128<br>Telephone: (305) 375-5151<br>Fax: (305) 375-5634<br>Email: mbv@miamidade.gov;<br>orosent@miamidade.gov<br><br>*No service necessary* |