UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 08, 2020

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 19-10254-CC
Case Style: John Doe #1, et al v. Miami-Dade County, et al
District Court Docket No: 1:14-cv-23933-PCH

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 19-10254
_____

District Court Docket No.
1:14-cv-23933-PCH

JOHN DOE #6,
JOHN DOE #5,

           Plaintiffs - Appellants,

versus

MIAMI-DADE COUNTY,

           Defendant – Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: September 09, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

ISSUED AS MANDATE 10/08/2020

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10254
_____

D.C. Docket No. 1:14-cv-23933-PCH

JOHN DOE #6,
JOHN DOE #5,

                   Plaintiffs-Appellants,

versus

MIAMI-DADE COUNTY,

                   Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 9, 2020)

Before MARTIN and NEWSOM, Circuit Judges, and WATKINS,[*] District Judge.

---

[*] Honorable W. Keith Watkins, United States District Judge for the Middle District of Alabama, sitting by designation.

MARTIN, Circuit Judge:

John Doe #5 and John Doe #6 (the "Does") are former sex offenders and currently homeless residents of Miami-Dade County, Florida (the "County"). Asserting violations of the federal and Florida constitutions, the Does sued the County over County Ordinance No. 05-206 (the "Ordinance"), which restricts certain sex offenders from living within 2,500 feet of a school. They alleged that the Ordinance violates the ex post facto clauses of both the federal and state constitutions because the residency restriction amounted to an impermissible retroactive criminal punishment.

On the last day of a five-day bench trial, the Does moved to conform their pleadings to the evidence under Federal Rule of Civil Procedure 15(b). To this point, the Does had only pursued a facial challenge to the Ordinance. Through their motion, they hoped to add an as-applied challenge, because they believed the trial evidence supported such a challenge. The District Court denied their motion and ruled against the Does on the merits of their facial challenge.

On appeal, the Does argue that the District Court should have granted their Rule 15(b) motion and permitted them to bring an as-applied challenge to the Ordinance. Their argument fails. Rule 15(b) allows parties to add unpled issues to a case if those issues have been tried with the express or implied consent of the parties. But one must comply with the notice demands of procedural due process

2

before an unpled issue can be added. And here, the Does did not give fair notice to the County of their as-applied theory of relief. Beyond this, the County says it would have defended the Ordinance differently had it known that the Does sought this relief. For this reason, the District Court did not abuse its discretion by denying the Does' Rule 15(b) motion.

## I.

In 2005, the County enacted Ordinance No. 05-206, which prohibits people convicted of certain sex offenses against a victim 15 years or younger from residing within 2,500 feet of a school. The Ordinance applies retroactively to sex offenders convicted before its enactment. The Ordinance contains a "grandfather clause" that exempts offenders who established their residence before the Ordinance was enacted, or who established their residence before a school opened within 2,500 feet of their residence. Initially, the Ordinance allowed municipalities within the County to opt out of the Ordinance and enact more restrictive ordinances to the same effect. Twenty-four municipalities in the County chose to adopt more restrictive measures, which caused affected sex offenders to be relegated to unincorporated areas of the County or to cities without sex offender residency restrictions. In January 2010, the County amended the Ordinance to preempt these more restrictive municipal ordinances.

At some point after the Ordinance was passed, a homeless encampment (the "71st Street Encampment") overwhelmingly occupied by former sex offenders sprung up in the County. At its busiest, the 71st Street Encampment sheltered up to 270 homeless people. John Doe #5 and John Doe #6 are two homeless men who once lived in the 71st Street Encampment. Both were convicted of sex offenses against a minor before the Ordinance became law in 2005.

Mr. Doe #5 was convicted in 1994 of lewd and lascivious assault on a child and attempted sexual battery on a minor. He spent time in prison for violating his probation from 1996 to 2001 and 2002 to 2003. From 2006 to 2014, he was incarcerated for failing to report his address in compliance with sex offender registration requirements. Since his release from prison in March 2014, he has been homeless. Mr. Doe #5 lives with advanced Parkinson's disease, which causes significant tremors. He is unemployed and receives disability benefits as his only source of income. Currently, Mr. Doe #5 spends his days at a family member's home, but he cannot sleep there because doing so would violate the Ordinance. At night, he sleeps in the front seat of his son's car, parked in front of a warehouse.

Mr. Doe #6 pled guilty in 2004 to one charge of lewd and lascivious molestation of a child less than 12 years of age. He lived in a home that was grandfathered in under the Ordinance until 2013, when his landlord learned he was a sex offender and refused to renew his lease. From 2013 to 2015, Mr. Doe #6

4

lived with various friends, but this arrangement put him in violation of the Ordinance because his friends' homes were within 2,500 feet of a school. In January 2015, he was arrested and charged with violating the sex offender registration requirement by not living at his reported address. He was sentenced to probation and, because he was unable to find Ordinance-compliant housing, he became homeless. His probation officer directed him to the 71st Street Encampment, where he lived from August 2015 until April 2018. Mr. Doe #6, who works in the culinary field, searched for housing close to his work. He has not been successful in his search, so he sleeps on a street corner.

In October 2014, John Does #1, #2, and #3 filed suit against the County bringing multiple constitutional challenges to the Ordinance. The District Court dismissed their complaint for failure to state a claim. On appeal, this Court reversed dismissal of their claims under the ex post facto clause of the Florida and United States constitutions. Doe v. Miami-Dade County, 846 F.3d 1180, 1182 (11th Cir. 2017).

In October 2017, John Doe #3—along with new plaintiffs John Does #4, #5, #6, and #7—filed a second amended complaint alleging ex post facto clause violations under the Florida and federal constitutions. The complaint styled their suit as a facial challenge. It asked the District Court to "[i]ssue a permanent injunction prohibiting Defendants from enforcing the Ordinance against anyone

5

whose qualifying offense occurred before the enactment of the Ordinance." John Doe #3 then withdrew from the case, leaving only Does #4–7. Throughout the pretrial proceedings, the Does maintained they were asserting a facial challenge to the Ordinance.

The County moved for summary judgment, and the District Court denied the motion. The court heard the claims at a five-day bench trial on October 22–26, 2018. John Does #4, #5, #6, and #7 testified at the trial about their criminal history and their search for housing. On the next-to-last day of trial, the District Court remarked:

> Since this is a facial and not an as-applied challenge, we heard a lot from the Does about their individual circumstances. Some of them are pretty compelling. Maybe they would survive the as-applied challenge because it's so onerous for them to be able to comply with the statute and go about any kind of reasonable existence. But we don't have an as-applied case here. So think about that. I'm kind of addressing the plaintiffs' counsel in this case.

The next day, Does #4–7 moved to conform the pleadings to the evidence under Federal Rule of Civil Procedure 15(b). In their motion, they asked to "add an as-applied challenge to their second amended complaint." They argued that they already established an as-applied ex post facto claim at trial by introducing evidence of the individual Does' circumstances, and that the County implicitly consented to allow the Does to try this theory of the case.

6

The County objected. The County said it had not received notice of an as-applied constitutional claim and would suffer prejudice if the Does were allowed to amend. The District Court agreed with the County that the parties had not implicitly litigated an as-applied attack on the Ordinance, and that the County would suffer prejudice if the claim were to be added.

After the bench trial, the District Court ruled for the County based on its findings of fact and conclusions of law. It held that Does #4–7 could not succeed on their facial challenge to the Ordinance because the County established the Ordinance as rationally related to the goal of protecting children in the community. The court also held that the Ordinance's effect was not excessive with respect to its purpose of public safety. The court noted that the plaintiffs "could have a potential 'as applied' challenge to the Ordinance" based on their "particular hardships . . . [including] mental or physical disabilities," but that "no Doe has alleged an 'as applied' claim here." The District Court then entered final judgment for the County.

Does #4–7 appealed. Tragically, John Doe #4 and John Doe #7 both passed away in 2019 while this appeal was pending. John Does #5 and #6 are the sole remaining plaintiff-appellants. On appeal, the Does dispute the denial of their Rule 15(b) motion.

7

## II.

We review the District Court's ruling on a Rule 15(b) motion for an abuse of discretion. See Jimenez v. Tuna Vessel Granada, 652 F.2d 415, 421–22 (5th Cir. Unit A July 1981).[1]

## III.

Rule 15 of the Federal Rules of Civil Procedure, which governs amendments to pleadings, is the unlikely centerpiece of this appeal. Rule 15(b) permits amendments during and after trial. The Does travel under Rule 15(b)(2), which allows amendment of pleadings "for issues tried by consent." Fed. R. Civ. P. 15(b)(2). Rule 15(b)(2) reads:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.

Id. Relying on this subsection, the Does say the County implicitly consented to an as-applied challenge to the Ordinance.[2] And based on this implied consent, they

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court held that decisions of the former Fifth Circuit handed down before close of business on September 30, 1981, are binding on the Eleventh Circuit. Id. at 1209.

[2] The Does do not argue that the County expressly consented to the as-applied challenge. Nor could they, because the County objected to the Rule 15(b) motion and continues to oppose amendment of the pleadings on appeal. See Borden, Inc. v. Fla. E. Coast Ry. Co., 772 F.2d 750, 758 (11th Cir. 1985) (holding that "objection to the amendment at the close of trial and [an] appeal indicates that [a party] did not expressly consent to the trial of [unpled] issues").

8

argue that the District Court should have enjoined the Ordinance from being applied to Mr. Doe #5 and Mr. Doe #6.

Rule 15(b) is, at best, an imperfect vehicle for the Does' arguments. This is because a plaintiff asserting a facial challenge does not need to amend her complaint to bring an as-applied challenge. The Supreme Court has explained that "the distinction between facial and as-applied challenges is not so well defined . . . that it must always control the pleadings and disposition in every case involving a constitutional challenge." Citizens United v. FEC, 558 U.S. 310, 331, 130 S. Ct. 876, 893 (2010). Instead, the distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." Id. Plaintiffs' arguments suggest that if facial and as-applied challenges are identically pled, it follows that a party does not need to amend his pleadings under Rule 15(b) in order to add a facial claim where he has pled an as-applied claim, or vice versa.

Our Court has expressed some support for this argument when the switch in focus from facial to as-applied relief happens at the summary judgment stage. In American Federation of State, County and Municipal Employees Council 79 v. Scott ("AFSCME"), 717 F.3d 851 (11th Cir. 2013), we considered the difference between a facial and an as-applied challenge in the context of amending a complaint. The plaintiff, a government employees' union, asserted a Fourth Amendment claim against a Florida executive order requiring drug testing of all

9

state employees.  Id. at 857, 859.  Like the Does' complaint, the AFSCME union's complaint used "the terminology of a facial challenge," asking the District Court to enjoin "all employee drug-testing mandated by [the] Executive Order."  Id. at 859.  The union also "expressly maintained that its challenge was facial prior to filing a motion for summary judgment."  Id. at 862.  At summary judgment, however, "the Union began recasting its complaint in the terminology of an as-applied challenge," arguing that the statute was unconstitutional "as applied" to certain union members.  Id. at 860.  The District Court ultimately agreed that the policy was unconstitutional as applied to these members and granted summary judgment to the union.  Id. at 861–62.

On appeal, the State argued that "the district court could not have construed the Union's suit as an as-applied challenge at all because the Union's complaint requested only facial relief and the Union insisted during discovery that it was mounting a facial challenge."  Id. at 863.  The AFSCME Court rejected this argument.  The Court explained: "Ordinarily, it is true that, at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Rule] 15(a)," which provides for amending a complaint before trial.  Id. (alteration adopted and quotation marks omitted).  But it observed that the union did not need to amend its complaint under Rule 15 because it was "not stating a new claim, only clarifying the scope of its

10

desired remedy." Id.  Our Court stated that "the line between facial and as-applied relief is a fluid one" and "perhaps the best understanding of constitutional challenges is that there is no single distinctive category of facial, as opposed to as-applied, litigation." Id. at 865 (alteration adopted and quotation marks omitted).

The Does argue that their case is just like AFSCME, and thus they should receive as-applied relief from the Ordinance.  Unlike the AFSCME plaintiffs, however, the Does have styled their arguments under Rule 15 as a requested amendment to the pleadings.  And, unlike AFSCME, the Does did not seek to introduce an as-applied challenge at summary judgment.  Instead, they waited to raise the issue at the end of trial.  On this record, the parties agree that the Does' ability to receive as-applied relief turns on the requirements of Rule 15(b).

Despite our misgivings about Rule 15(b)'s application, we evaluate the Does' arguments under the framework of that Rule.  We do not decide whether the Does might have succeeded by making arguments outside of Rule 15(b).  Only in their reply brief on appeal do the Does acknowledge that, while they "used a Motion under Rule 15(b) to request as-applied relief, . . . AFSCME suggests that it was not necessary to amend the pleading" to receive this relief.[3]  Because this

---

[3] True, the Does referenced AFSCME in their opening brief to this court.  However, they did so to say that their facial challenge to these ordinances was not actually so different from what an as-applied challenge would have looked like.  Essentially the argument made in the Does's opening brief is that the as-applied claim it now seeks to assert is not really so different than the facial challenge it actually asserted.  As the Does point out, our court has recognized that the difference between a facial challenge and an as-applied challenge is "not so well

11

argument appeared for the first time in the Does' reply brief, we consider it waived. See McGinnis v. Ingram Equip. Co., 918 F.2d 1491, 1495–96 (11th Cir. 1990) (en banc).

Thus, we return to the text of Rule 15(b). As we've said, Rule 15(b) permits amendment where unpled issues have been tried by the implied consent of the parties. "[I]mplied consent under Rule 15(b) will not be found if the defendant will be prejudiced; that is, if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend." Cioffe v. Morris, 676 F.2d 539, 541–42 (11th Cir. 1982). We affirm the judgment of the District Court because the County had no notice of the as-applied challenge and that it would be prejudiced if such a challenge were added to the pleadings at the close of trial.

A. Notice of the As-Applied Challenge

First, the County did not receive sufficient notice of the Does' as-applied ex post facto claim. "[T]rial of unpled issues by implied consent is not lightly to be inferred" and must comply with "the notice demands of procedural due process." Jimenez, 652 F.2d at 422. The presence of implied consent "depends on whether the parties recognized that an issue not presented by the pleadings entered the case

---

defined." AFSCME, 717 F.3d at 863. However that recognition has less application here where the Does affirmatively disavowed that they were making an as applied challenge. See id. at 864.

12

at trial." Id. at 421.  For example, "[f]ailure to object to evidence raising issues outside of the pleadings constitutes implied consent as long as the evidence is not relevant to issues already within the pleadings." United States ex rel. Seminole Sheet Metal Co. v. SCI, Inc., 828 F.2d 671, 677 (11th Cir. 1987).  On the other hand, "[t]he introduction of evidence arguably relevant to pleaded issues cannot serve to give a party fair notice that new issues are entering the case." Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487 (11th Cir. 1987).

    The Does do not show that the County had notice of its as-applied theory of relief.  First, the County did not agree to the admission of evidence supporting an as-applied ex post facto challenge that was irrelevant to the facial ex post facto challenge.  Of course, evidence introduced at trial about the individual Does' experiences with the Ordinance, the criminal justice system, housing, and homelessness could have supported an as-applied challenge.  But the Does admit that the evidence about their personal experiences was also relevant to their facial challenge.  For this reason, the Does did not have implied consent from the County by way of the introduction of evidence that was irrelevant to their already-pleaded claims.

    Second, the County did not have notice of an as-applied claim because it received assurances that the Does were not interested in an as-applied claim.

13

Indeed, the County points to as many as 20 instances since the filing of the initial complaint in October 2014 in which the Does arguably disclaimed an as-applied challenge. See Appellee's Br. at 27–29.

The Does urge us to look only at their representations about the second amended complaint—the operative pleading—which they filed in October 2017. They point out that the second amended complaint, while using broad language evocative of a facial challenge, does not expressly limit the Does' ex post facto claim to a facial theory. But, even addressing only their second amended complaint, the Does continued to assert from this point on that their ex post facto claim was facial, not as-applied. For instance, at a pretrial calendar call in October 2018 (prior to the bench trial), the District Court asked, "[I]t's a facial challenge only; right?" The Does' counsel replied, "Yes." And on the first day of trial, the Does' counsel remarked, "As the County has pointed out numerous times, [this case] is a facial challenge."

Relying on AFSCME, the Does seem to argue that a defendant litigating a facial challenge always implicitly consents to an as-applied challenge. Under Rule 15(b)'s framework, we do not see how this could be so. Rule 15(b) requires notice to the opposing party, and the Does did not provide this notice. The District Court therefore did not abuse its discretion in holding that Rule 15(b) did not permit adding an as-applied challenge.

14

B.  Substantial Prejudice from the Addition of an As-Applied Challenge

Beyond this, the County made a showing of substantial prejudice from the addition of an as-applied challenge.  "[A]n implied amendment of the pleadings will not be permitted where it results in substantial prejudice to a party."  Int'l Harvester Credit Corp. v. E. Coast Truck, 547 F.2d 888, 890 (5th Cir. 1977).  Prejudice turns on "whether [the defendant] had a fair opportunity to defend and whether [the defendant] could offer any additional evidence if the case were to be retried on a different theory."  Id. (quotation marks omitted); see also 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc. § 1493 (3d ed. Apr. 2020 update) ("Prejudice in [Rule 15(b)'s] context means a lack of opportunity to prepare to meet the unpleaded issue.").  The District Court also did not abuse its discretion by holding that the County would be unduly prejudiced if the Does added an as-applied challenge.

Some background on the ex post facto clause is helpful to understanding the parties' arguments.  Article I, § 10, of the Constitution prohibits States from enacting any ex post facto, or retroactive, increases in criminal punishment or changes in the definition of crimes.  See Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601 (1995).  A civil law that applies retroactively, like the Ordinance, can violate the ex post facto clause in two ways.  First, the law is unconstitutional if the legislature intended to impose punishment.  Smith v. Doe,

15

538 U.S. 84, 92, 123 S. Ct. 1140, 1147 (2003). Second, the law is unconstitutional if "the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." Id. (alteration adopted and quotation marks omitted). At trial, the Does argued the Ordinance was unconstitutional in both ways. The District Court rejected both arguments, holding that the County had not enacted the Ordinance with punitive intent and that the punitive effect of the Ordinance was not so excessive as to transform it into a criminal penalty.

On appeal, the Does say that the County would not be prejudiced by the addition of an as-applied challenge. The Does point out that the County sought ample information about the individual plaintiffs in discovery. The County asked Does #5 and #6 about their addresses, employment, income and savings, government benefits, search for Ordinance-compliant housing, history of homelessness, thoughts on the burden imposed by the Ordinance, budget for rent, relationship and family history, supervised release history, potential roommates, and history of sexual activity with minors. The Does also identify portions of the trial during which the County questioned the Does about their offenses, their acceptance of responsibility, and their housing search.

The County says it would be prejudiced. It points out that to survive a facial constitutional challenge, the County needed to show that the Ordinance's overall effect on all covered sex offenders was not so punitive that it constituted a criminal

penalty.  See Smith, 538 U.S. at 92, 123 S. Ct. at 1147.  After trial, the District Court held that the County made this showing because the Ordinance was not excessively punitive toward covered offenders.  For example, the court found that "most registered sex offenders subject to the Ordinance have found housing" and "there are other more significant causes of homelessness in Miami-Dade County, irrespective of the Ordinance."  The court also held that the Ordinance's restrictions were not excessive in relation to their purpose, because "there is credible evidence that residency restrictions deter the opportunity and 'urge' to reoffend, including unrefuted evidence that a significant percentage of sex offenders find residency restrictions helpful in preventing them from reoffending."

But to refute an as-applied challenge, the County would have needed to show that the Ordinance's effect on the Does was not excessively punitive in relation to its purpose.  For this reason, the County argues that it would have litigated its case differently if it had known the Does sought individualized relief from the Ordinance.  The County says it would have cross-examined the Does more extensively, introduced more evidence to impeach the Does, asked the Does to undergo physical or mental examinations, hired expert witnesses to evaluate the Does' "individualized recidivism concerns," and called as witnesses the professionals who treated the Does.  Instead, while defending against the facial challenge, the County limited its cross-examination of the Does and introduced no

evidence about the Does' personal risks of recidivism. We are persuaded that the County would have made different choices at trial had it anticipated an as-applied challenge to the Ordinance, because would have needed to show the Ordinance's effects on the Does were proportional to the Does' risks of recidivism. For this reason, we cannot reverse the denial of the Does' Rule 15(b) motion.

\*   \*   \*

On this record, the District Court did not abuse its discretion by denying the Does' motion. The County did not implicitly consent to the Does' as-applied challenge within the meaning of Rule 15(b), and it would suffer prejudice from the addition of such a challenge.

**AFFIRMED.**